23654. AMERICAN INSURANCE COMPANY OF NEWARK
*v.* SEMINOLE COUNTY BOARD OF EDUCATION.

DECIDED SEPTEMBER 27, 1935.

*W. L. Bryan, R. L. Cox, Smith, Smith & Bloodworth,* for plaintiff in error.

*Sumter M. Kelly, E. C. Smith Jr., Spalding, MacDougald & Sibley,* contra.

STEPHENS, J. This is a suit by Seminole County Board of Education against American Insurance Company of Newark, New Jersey, in which the plaintiff seeks to recover of the defendant an amount alleged to be due the plaintiff by the defendant as unearned or "returned" premiums on canceled fire-insurance policies. The defendant denied liability. Certain issues relative to the sufficiency of service were decided adversely to the defendant. The case went to trial on its merits, and a verdict and judgment for the plaintiff were rendered. A motion for a new trial was overruled, and the case was brought by the defendant to this court for review on exceptions to the overruling of the defendant's motion to

quash the process and service, the striking of the defendant's traverse to the sheriff's return of service, and the judgment overruling the motion for new trial. The judgment was reversed by this court on the ground that it appeared as a matter of law that no lawful service had been perfected upon the defendant. *American Insurance Co.* v. *Seminole County Board of Education,* 49 *Ga. App.* 835 (176 S. E. 795). As this was controlling, this court did not pass on the exceptions to the judgment overruling the defendant's motion for a new trial. This judgment was reversed on certiorari by the Supreme Court. *Seminole County Board of Education* v. *American Ins. Co.,* 180 *Ga.* 661 (180 S. E. 229). In accordance with that ruling of the Supreme Court the judgment of reversal rendered by this court is vacated, and the case now stands in this court for decision upon all the assignments of error in the bill of exceptions.

■ By an application of the law as announced by the Supreme Court, this court now holds that lawful service was perfected upon the defendant, and that the judge did not err in overruling the motion to quash the process and service, and in striking the traverse to the return of service. The motion for a new trial was upon the general grounds only.

The material portions of the evidence adduced on the trial are substantially as follows: During the year 1928 Otho Benton was the county superintendent of schools of Seminole County. He was also the agent of a number of fire-insurance companies. In December, 1928, the matter of renewing the insurance on the school property of the county was discussed in a meeting of the board of education, and "a motion was made and carried, directing the superintendent to place this insurance for five years, and have all policies written to expire at the same time, and for the same amounts as now are on this property." Eleven policies in four different companies were issued by Otho Benton as agent for the insurance companies. The policies were dated December 2, 1928, and ran for the term of five years. The premiums amounted to about $3000. Only three of these policies are here involved. Two were in the Norwich Union Fire Insurance Company, and one in the National Liberty Insurance Company. These three policies will hereafter be called "the first policies," to distinguish them from three later policies in the American Insurance Company, is-

sued by Otho Benton on the same property, which will be called "the last policies." Otho Benton presented to Seminole County Board of Education an itemized account for the premiums, which was approved by the board for payment. About December 29, 1928, he drew a check in part payment to himself as agent, signed by himself as county superintendent of schools, for $2464.85, which was paid by the bank. On January 1, 1929, he was succeeded in office as county superintendent of schools by S. J. Lester. On February 2, 1929, Benton applied to the county board for payment of the balance due him as agent. The board authorized the payment, and Lester as county superintendent gave to Benton as agent a check for $1500 which was paid the same day. Early in March three of the policies were surrendered by Lester to Benton in exchange for three policies in American Insurance Company. Lester testified that Benton came to see him "and stated that the companies in which these policies were written did not care for this business, and for that reason he had written the policies in another company, and wished to exchange these policies. I asked him if it was customary to handle this in that way, and he said that it was. So I exchanged them. . . I accepted these policies in the American Insurance Company in lieu of the policies which were surrendered. Nothing was said about the payment of any premium on these policies in the American Insurance Company, and nothing was said about any refund on the policies which were surrendered." Benton testified: "The premiums on the policies which Mr. Lester gave me had been paid, and I left Mr. Lester with the understanding that the premiums had been paid, and that there was no charge for the change. I just substituted the American policies for the two policies in the Norwich Union Company and one in the National Liberty. All of the canceled policies were returned to the company. . . Nothing was said about refunding the premium from the National Liberty Company and repaying it to the American Insurance Company." He testified also that he did not remit to the companies the money paid him on the first policies, but used it in various ways. He testified further that he had not made full and final settlement with the various companies, and that for a period of years he had been behind with his account. He stated: "I don't understand what you mean by insolvency. I didn't have enough money to pay all I owed. I was behind with

my creditors and also the insurance company." There was also evidence that there was a custom where one company issued a policy, and then desired to cancel, its agent, who· was an agent of another company, could replace the insurance with the latter company; but if the agent was insolvent and unable to pay the second company, this custom would not be binding, and the agent would not be authorized to issue .the policy in the second company. There was evidence that if the agent was insolvent and the company knew it, the ·company would not permit the agent to substitute policies where he was agent also of another company. Also, that Benton, after the issuance of all the policies, had surrendered his agency and had made payments on his indebtedness to all the companies which he represented, including his indebtedness to the defendant company.

The last policies, the ones issued by the American Insurance Company, were dated March 2, 1929, and were for five years. In June the American Insurance Company wrote to the county superintendent, giving notice of cancellation, etc. The county superintendent replied, demanding return of unearned premiums. The president of the county board also was given notice of cancellation, and the American Insurance Company denied that any premiums had been paid and denied liability for return premiums. The defendant denied that the premiums on the policies had ever been paid, and denied that it was liable for return premiums. The question is distinctly raised in ground 5 of the defendant's motion for new trial, where it is alleged that "the verdict is contrary to law and evidence, for the reason that it appears from the uncontroverted evidence that the American Insurance Company has never been paid for the policies sued on." It is claimed by the defendant in error that the substitution of the last policies for the first policies, without cost to the county board, was equivalent to payment of the premiums on the last policies. Benton owed the first insurers for the premiums (less his commissions) ; the return premiums were owing to the county board, and presumably would be sent to Benton to be turned over to the board. Therefore, in order to prevent these funds from reaching the board, it was necessary to create a new indebtedness of the board to be set-off against the board's claim for the return premiums. This was an indebtedness by the board for the premiums on the new policies. Such a

debt had to be created in order to establish a set-off against the right to receive the return premiums on the first policies. This is what was attempted in the substitution of the policies. The board of education was not consulted in the matter. No one but the board of education could create such a debt.

The act of 1919 defines the duties of the county superintendent of schools, among which is the duty to "audit all accounts before an application is made to the county board for payment." Park's Code Supp. 1922, § 1440(i). If the money to pay the return premiums had been sent to Benton and by him turned over to the county superintendent, the latter could not have invested it in new insurance without an order of the board. The law provides that he may disburse the funds in his hands only on the order of the county board of education. Park's Code Supp. 1922, § 1437(nn). If the county superintendent, Lester, was the agent of the county board to collect the return premiums of the first policies, he was without authority to agree that the proceeds should be applied to a debt due by his principal. *Hill* v. *Van Duzer,* 111 *Ga.* 867 (36 S. E. 966). The last policies contain a provision that "If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned," etc. Thus the obligation to pay return premiums arises only when the premiums have been "actually paid." In Webster's Dictionary one of the meanings of the word "actual" is "real—opposed to potential, possible, virtual, speculative, conceivable, theoretical, hypothetical, or nominal." There was no "actual" payment of the premiums. The premiums on the first policies were actually paid in cash to the insurers by being paid to their agent, Benton. These insurers have not repaid any part of the full premiums. In contemplation of law they still have the money. The alleged payment of return premiums consisted only of the extinction of an alleged debt of the board of education for premiums due to the last insurer, which debt was not authorized or ratified by the board at any time before the policies were repudiated by the defendant. The fact that Benton had authority from all the companies concerned to write and deliver policies and account to them for the premiums makes no difference.

No question is presented as to the validity or invalidity of the policies issued by the defendant to the plaintiff. Let it be as-

sumed for the purpose of this case that these policies constituted valid contracts of insurance. The sole question for determination is whether the premiums on these policies were paid to the defendant. If they were paid, the plaintiff is entitled to recover of the defendant the unearned premiums; if they were not paid, the plaintiff is entitled to recover nothing. The premiums were payable in money or its equivalent; and unless they were so paid either to the defendant directly or to Benton as its authorized agent, there was no payment. After the policies in the first companies of which Benton was the agent had been canceled if he had turned over to Seminole County Board of Education the return premiums due to be paid to the board by these companies, and the board had then turned over the money to Benton in payment of the premiums on the second or substituted policies, and Benton was the authorized agent of the second company and had the right to issue the substituted policies and accept payment of the premiums, this might, under the circumstances, have amounted to a payment of the premiums on the second policies; and the plaintiff, upon the cancellation afterwards by the company of the substituted policies, would then have had a right to recover of the company an amount representing the return premiums on the policies. This is not what was done. If Benton, at the time of the exchange of policies, had in possession the money due by the first companies to the board of education as return premiums on the first policies, and the board directed him to retain them as the agent of the defendant in payment of the premiums on the new policies, this might have operated as a payment to the defendant of the premiums due on the new policies. This does not appear to have been done. The burden is on the plaintiff to prove payment of the premiums to the defendant, in order to establish its right to collect any return premiums. It is incumbent on the plaintiff to show that the premiums were paid in money or its equivalent to the defendant or to its authorized agent. In order to do this, the plaintiff relies on the transaction between Benton and the county superintendent with reference to the exchange of the policies.

It appears conclusively from the evidence that the premiums which the board of education had paid Benton on the first policies did not reach the companies but were used by Benton for his own purposes. This appears from Benton's own testimony. It also

appears from Benton's testimony, which is not contradicted and which must be taken as conclusive, that he was behind with his creditors, including the insurance company, and did not have enough money to pay all that he owed. Only one inference can be drawn from these facts, and that is that Benton, when he exchanged the policies, did not have in his possession the amount of money representing the return premiums on the first policies, and was in such financial condition that he could not pay this money. This being the situation at the time of the exchange of the policies (and it so appears from the uncontradicted evidence), it does not follow that the premiums on the substituted policies were paid to the company which issued them merely because of the exchange of the policies with the "understanding" (as Benton states) between Benton and the superintendent that the premiums had been paid. This is true notwithstanding the fact that Benton may have been the agent of this company to issue policies and to receive payment of premiums thereon. Instead of the premiums being paid to the defendant in money or its equivalent, it is claimed that they were paid by an arrangement by which Benton as the agent for both companies, who had no money in his possession to pay the premiums, and who was insolvent and unable to pay the premiums, purported to "pay" the defendant through a mere fiction by which, in his mind, he transferred to the defendant non-existing money representing the return premiums on the first policies, in payment of premiums on the second policies. This did not constitute a payment to the defendant of money or its equivalent. The defendant had a right to an actual payment of these premiums. It has been held that an agreement between an agent of an insurance company and a policyholder by which the premium on the policy is paid by a cancellation of a debt due by the agent to the policyholder is not a payment of the premium. Hoffman v. John Hancock Mutual Life Ins. Co., 92 U. S. 161 (23 L. ed. 539); Folb v. Fireman's Insurance Co., 133 N. C. 179 (45 S. E. 547). The original payment of the money to Benton in discharge of the premiums on the first policies was unquestionably a payment to the first companies, as Benton was their agent authorized to issue the policies and to receive the premiums. If Benton failed, as he did, to remit these premiums to the first companies, these companies nevertheless, upon the cancellation of the policies, owed to the board of education the

return premiums. When Benton exchanged the policies with the superintendent of schools, the first companies had not remitted the return premiums to Benton for payment to the board of education. Benton actually had in hand no money which represented the return premiums due to the board of education with which to pay, in behalf of the board, either to himself as agent of the last companies or to any other agent for these companies, the premiums on the substituted policies. The transaction between Benton and the superintendent of schools, whereby he exchanged the policies under the circumstances stated, did not in fact amount to a payment to Benton as agent of the last companies of the premiums on the substituted policies.

It is immaterial that the plaintiff, through its superintendent in dealing with Benton, may have had no notice of the fact that Benton did not have the money, or that he was insolvent and could not pay the money to the second company. The plaintiff, in paying its debt to the second company for the substituted policies, should have seen that it was in fact paid by something tangible, something which in law constituted payment, and not have attempted to discharge the debt by a mere fiction of shifting an imaginary something from one company or from Benton to the other company. The plaintiff took the risk of the premiums being paid under the circumstances of the exchange of the policies. If, however, Benton at the time had the money, or if he did not have it but was able to pay it, and the insurance companies which issued the second policies had, under arrangement with their agent, Benton, accepted such an arrangement as payment of the premiums, this would have inured to the benefit of the plaintiff and the premiums would in law have been paid. If the premiums were not in fact paid because Benton had no money belonging to the plaintiff with which to pay them and was financially unable to pay them, and the company was unwilling to treat this situation as a payment of the premiums, the premiums were not paid in fact or in law, notwithstanding the plaintiff may have had no knowledge of these facts. At best, the arrangement under which it was attempted to pay the premiums on the second policies was but a transfer and payment of the premiums by the board of education to the second company, through Benton as its agent to collect the premiums, of a chose in action against the first companies for the

return premiums due by the first companies to the board of education. This was not a payment in fact. It can not be treated as a payment unless Benton as the agent of the second company had authority to accept payment in that manner or unless his act was ratified by his principal. It not appearing that Benton had such authority or that the company ratified his act, this transaction was not a payment of the premiums to the second company. If the second company, under its arrangement with Benton as its agent, had in fact accepted such a transaction by the substitution of policies as a payment of the premium, this would be merely treating the transaction as payment and accepting it as such where otherwise it did not constitute payment.

The evidence was insufficient to show that the premiums had been paid to the defendant, and the verdict for the plaintiff was unauthorized. The court erred in overruling the motion for new trial.

*Judgment reversed. Jenkins, P. J., and Sutton, J., concur.*