QUESTIONS: 1. Can a county, by local ordinance, require a private owner to control burn his land for fire protection purposes in view of the specific provisions of s. 590.08, F. S., as well as other provisions in Ch. 590? 2. If question 1 is answered affirmatively, can the county contract with the state Division of Forestry to perform such control burns if the private owner fails to comply with such an ordinance? 3. Can a county, through local legislation, obtain the authority to require a private landowner to control burn his land as a fire prevention measure? 4. Would an amendment to Ch. 590, F. S., be more appropriate in relation to this matter in lieu of a county ordinance, if such amendment gave the Division of Forestry the authority to prescribe and burn limited areas of private land as a fire prevention measure without the authority of the owner?
SUMMARY: The authority granted a noncharter county by s. 125.01, F. S., to provide "fire protection" does not include the power to require a landowner to control burn his property for fire prevention purposes or to contract with the state Division of Forestry for such control burning. A legislative act specifically authorizing a county or counties or the Division of Forestry to engage in such control burning must comply with constitutional due process and equal protection requirements. AS TO QUESTIONS 1 AND 2: In answering these questions, it is assumed that the county is a noncharter county and that there are no applicable special or local laws governing your question. Although your first questions refer to s. 590.08, F. S., making it unlawful for any person to willfully or carelessly burn or to set fire to, or cause a backfire to be set to "any forest, grass, woods, wild lands or marshes not owned or controlled by such person," that statute does not control and is not dispositive of the questions as they relate to the county's legislative powers to enact ordinances under the police power and/or to contract for the execution and enforcement of such ordinances. Section 1(f), Art. VIII, State Const., provides that noncharter counties (with which we are herein concerned and limited to) "shall have such power of self government as is provided by general or special law." This means that legislative authority must be found for the exercise by a noncharter county of its home rule power. Davis v. Gronemeyer,251 So.2d 1, 5 (Fla. 1971); Weaver v. Heidtman, 245 So.2d 295 (1 D.C.A. Fla., 1971); cf. State ex rel. Volusia County v. Dickinson,269 So.2d 9 (Fla. 1972). Under s. 125.01(1)(d), F. S., noncharter counties are authorized to "provide fire protection." This statute confers upon the county government the authority to enact local ordinances to provide fire protection, provided that such ordinances are "not inconsistent with general or special law." Section 1(f), Art. VIII, State Const. As noted in AGO 072-347, the Division of Forestry is required by s. 125.27(1), F. S., to enter into a contract, when requested by a county to do so, for the establishment and maintenance of countywide fire control and protection of all forest and wild lands within the county; and it may, under s. 125.27(2), id., provide communication services and other services directly related to fire protection within the county, other than forest fire control . . . provided the rendering of such services does not hinder or impede in any way the division's ability to accomplish its primary function with respect to forest fire control. Attorney General Opinion 072-347 also concluded that the county's authority under s. 125.01(1)(d), F. S., to provide fire protection is "all inclusive or more exhaustive" than the mandate of s. 125.27(1). Thus, insofar as the power of the county to adopt an ordinance relating to fire protection is concerned, the only limitation referable to Ch. 590, F. S., has to do with forest and wild land fire protection and control, as to which the primary responsibility is vested in the Division of Forestry by s. 590.02(1)(b). Attorney General Opinion 072-347. And it is clear that counties may, under s. 125.01(1)(d), supra, adopt ordinances relating to fire protection generally for lands and improvements within the unincorporated areas of the county and may, if they determine to do so, provide "countywide fire protection of all forest and wild lands within said county" (Emphasis supplied.), pursuant to s. 125.27(1), F. S., by agreement with and in cooperation with the Division of Forestry. The division is authorized by s. 125.27(2), F. S., to provide other services directly related to fire protection within the county, if requested by the county, other than forest fire control. However, the authority to provide for "fire protection" granted to a county by s. 125.01(1)(d) should not be interpreted as constituting broad and unlimited authority for a county to adopt an ordinance under the police power providing for the mandatory control burning of certain lands in the county under which trees, grass, shrubs, and plants may be destroyed to protect other segments of the public from potential injury or hazard. This statute must be read in pari materia with other laws pertaining to fire protection and control and the constitutional limitations upon the exercise of the police power of the state; and none of the statutes referred to above include any authorization or in any manner provide for compulsory or prescribed control burning of private land for protection purposes or the public health, safety, or welfare. Even during a drought emergency, backfires may lawfully be set only if it can be proved that such a backfire was necessary to save life or property; and the burden of proving such necessity as a defense rests upon the person asserting that defense. Section 590.081, F. S. Thus, it seems that neither the division nor a county is presently empowered by law to require a private landowner to control burn his land as a measure of preventing or controlling an anticipated blaze or a potential injury or hazard to life or property; and neither the division nor the county is authorized by law to perform such control burns. While municipalities are granted the power under former s. 167.05, F. S., to abate nuisances — and now possess such power under the Municipal Home Rule Powers Act, s. 166.042, F. S. — nowhere are counties granted such authority. County commissioners have only such powers as are granted them by statute; and where there is doubt as to the existence of authority, it should not be assumed. Hopkins v. Leon County, 74 So. 309 (Fla. 1917); Gessner v. Del-Air Corporation, 17 So.2d 522 (Fla. 1944). Since the county is without statutory authority to require control burning of private lands by the owners thereof for fire protection purposes, it likewise is without lawful authority to contract with the Division of Forestry to perform such control burns in the absence of consent thereto by the private owner or the lawful possessor of such land. Moreover, in the absence of statutory authorization, the governmental powers of the county commission cannot be delegated by contract or otherwise. Crandon v. Hazlett, 26 So.2d 638 (Fla. 1946); State v. Inter-American Center Authority, 84 So.2d 9 (Fla. 1955); Nicholas v. Wainwright, 152 So.2d 458 (Fla. 1963); 67 C.J.S. Officers s. 104. Your first two questions are accordingly answered in the negative. AS TO QUESTIONS 3 AND 4: As to whether the Legislature could validly authorize a county to require a private landowner to control burn his land as a fire prevention measure, there is nothing in s. 11, Art. III, State Const., designating the subjects upon which special laws are forbidden that would prohibit such a special law. Such legislation must, however, be consistent with other constitutional limitations. And, whether adopted as a special law relating to a particular county or as a general law relating to all the counties or to the Division of Forestry, due process and equal protection requirements for deprivation of property without compensation would have to be met. Actual necessity would have to be shown, an emergency would probably have to be declared to exist (e.g., as in s. 590.082, supra), and entry upon private lands (especially fenced or enclosed land) would have to be authorized; otherwise, the agents or employees of the county or the state might be found liable under the trespass laws for at least nominal damages and any actual damages flowing from such trespass. The statute would have to include detailed definitions, standards, and limitations so that such an exercise of the police power of the state, as delegated by the Legislature to the county or counties or the division, is "so clearly defined, so limited in scope, that nothing is left to the unbridled discretion of the agency charged with the responsibility of enforcing the Act." Mahon v. County of Sarasota, 177 So.2d 665, 666 (Fla. 1965). Cf. Flesch v. Metropolitan Dade County, 240 So.2d 504 (3 D.C.A. Fla., 1970). See also Corneal v. State Plant Board, 95 So.2d 1 (Fla. 1957). In State Plant Board v. Smith, 110 So.2d 401 (Fla. 1959), the court said: "There is a very clear distinction between an appropriation of private property to a public use in the exercise of the power of eminent domain, and the regulation of the use of property — and its destruction if necessary — in the exercise of the police power." The court went on to explain that "in the exercise of eminent domain the sovereign compels the dedication of the property, or some interest therein, to a public use, or, if already dedicated to one public use, then to another." The court then added: "On the other hand the police power is exercised by the sovereign to promote the health, morals, and safety of the community . . . it rests upon the fundamental principle that everyone shall so use his own as not to wrong or injure another." It is widely held that, in order to justify an exercise of the police power, there must be a sound basis of necessity to protect the health, safety, and welfare of the public and a reasonable relationship between the legislation so enacted and the object sought to be achieved. Larson v. Lesser, 106 So.2d 188 (Fla. 1958); Florida Citrus Commission v. Golden, 91 So.2d 657 (Fla. 1956); Eelbeck Milling Co. v. Mayo, 86 So.2d 438 (Fla. 1956); Gaylon v. Municipal Court of San Bernandino Judicial District, San Bernandino County,40 Cal.Rptr. 446 (4 D.C.A. Cal., 1964); Killingsworth v. West Way Motors, Inc., 347 P.2d 1098 (Ariz. 1959). See also Corneal v. State Plant Board, 95 So.2d 1 (Fla. 1957), in which the court held that the absolute destruction of private property "is an extreme exercise of police power" of the state and is "justified only within the narrowest limits of actual necessity, unless the state chooses to pay compensation." Thus, if control burning as a fire prevention measure results in the destruction of private property, the state must pay compensation for said property unless such destruction takes place in the face of "actual" necessity. Black's Law Dictionary defines "actual" as: Real; substantial; existing presently in act, having a valid objective existence as opposed to that which is merely theoretical or possible. Giacco v. Hartman,170 La. 949, 129 So. 540. Opposed to potential, possible, virtual, conceivable, theoretical, hypothetical, or nominal. American Ins. Co. of Newark, N.J., v. Seminole County Board of Education,51 Ga. App. 808, 181 S.E. 783, 786. Something real, in opposition to constructive or speculative; something existing in act. It thus appears in the instant case that if private property is destroyed through such controlled burning as has been discussed above the state must pay compensation to the owner of such property unless it is destroyed in the face of a presently existing — as opposed to a potential — necessity. In contextual terms, "actual necessity" must be interpreted to mean an existing, ongoing, threatening conflagration. The destruction, by the state or its agent, of private property in anticipation of some "actual necessity" yet to arise, as is suggested in the instant case (i.e., in order to control or prevent potential, future fires), without payment of compensation to the owner thereof, seems to be, under present case law guidelines, an unconstitutional act. Thus, any such amendment to Ch. 590, supra, as has been proposed above, would seem to have to provide for notice and a hearing, as well as for compensation to the owner of any private property which suffered destruction at the hands of the state, absent an "actual necessity," which in the instant case translates as an existing, threatening conflagration. Conversely stated, any amendment to Ch. 590 which would not provide for compensation to be paid to the owner of such land as is destroyed in the absence of an actual necessity would appear to be constitutionally infirm. Additionally, under further guidelines set forth in Smith v. State Plant Board, supra, it appears that a reasonable notice requirement must be met in order to comply with due process requirements. Equal protection requirements would also have to be met. In sum: The Legislature may provide for control burning of private land in appropriate circumstances; but such a statute must comply with both United States and Florida constitutional guarantees, particularly as laid down in the Corneal and Smith cases, supra.