119 So.2d 35 (1960)
R.G. CASSADY, As Tax Assessor of Lake County, Florida, et al., Appellants,
v.
CONSOLIDATED NAVAL STORES COMPANY, a Florida Corporation, Appellee.
Ray E. GREEN, As Comptroller of the State of Florida, Appellant,
v.
CONSOLIDATED NAVAL STORES COMPANY, a Florida Corporation, Appellee.
Supreme Court of Florida.
March 23, 1960.
*36 Carl E. Duncan, Tavares, for R.G. Cassady, as Tax Assessor for Lake County, Florida.
Richard W. Ervin, Atty. Gen., Leonard R. Mellon and Joseph C. Jacobs, Asst. Attys. Gen., for appellants.
E.D. Treadwell, Jr., Arcadia, for Consolidated Naval Stores Company, appellee.
ROBERTS, Justice.
This cause is before the court on direct appeal from a summary decree cancelling, as void, a tax assessed by defendant-appellant Cassady, as Tax Assessor of Lake County, against certain oil, gas and other mineral rights owned by the plaintiff-appellee in fee simple and perpetually enjoining the collection of the same by the defendant Tax Collector of Lake County. The tax in question had been assessed against plaintiff's sub-surface rights pursuant to § 193.221, Fla. Stat. [Ch. 57-150, Acts of 1957], F.S.A., upon the written request of the owners of the surface of the land. By its suit the plaintiff attacked § 193.221, supra, upon several constitutional grounds  inter alia, that it constituted a delegation of legislative power and violated the principles of equality and uniformity required by § 1, Article 9, of the Florida Constitution, F.S.A. After answers filed by the defendants, both sides moved for summary decree on the basis of the pleadings and an affidavit filed by plaintiff. The Chancellor denied that of the defendants and granted that of the plaintiff, awarding the relief noted above. Jurisdiction of the appeal attaches under Rule 2.1, subd. a(5) (a), Florida Appellate Rules, 31 F.S.A., authorizing appeals to this court from judgments or decrees passing directly upon the validity of a state statute.
We agree with the Chancellor that the statute in question, § 193.221, cannot be upheld as a lawful exercise of the "power" of taxation by the Legislature. The statute provides, in substance, that mineral, oil or other sub-surface rights, when owned in fee simple separately from the ownership of the surface of the land, either by purchase or by reservation, "shall be taken and *37 treated as real property and shall be subject to taxation separate from the fee." The duty is imposed upon the owner of the severed sub-surface rights to return the same for taxation by April 1st of each year; and, if not so returned by the owner thereof, the duty to assess such severed sub-surface rights for taxation is imposed upon the tax assessor in the following language:
"If a return is not made by the owner of the sub-surface rights, the duty is hereby imposed upon the tax assessor to assess said separate sub-surface rights for taxation and place it (sic) upon the tax rolls; provided that such separate assessment shall be required only when the owner of some record interest in said lands shall file with the tax assessor of the county, prior to April 1 of the year a written request for such separate assessment of such mineral, oil or other sub-surface rights." (Emphasis added.)
By providing in § 193.221, supra, for the assessment for ad valorem tax purposes of separately owned oil, mineral or other sub-surface rights, the Legislature has, by necessary implication, changed its previously expressed policy of exempting from ad valorem taxation any right, title or interest in gas or oil in place, whether owned separately or held intact by the owner of the surface. See § 211.13 et seq., Fla. Stat., F.S.A. This it had the right to do  subject to controlling constitutional limitations  in the exercise of its sovereign power to determine the subjects of taxation and the exemptions therefrom. Long v. St. John, 1936, 126 Fla. 1, 170 So. 317, 109 A.L.R. 809. And under § 5 of Article 9, Fla. Const., the Legislature may lawfully delegate to counties, acting through their constitutionally authorized and duly elected taxing officials, the authority to assess and impose taxes for county purposes. Whitney v. Hillsborough County, 1930, 99 Fla. 628, 127 So. 486, 493. Or it can exercise its taxing power through "statutory" boards or officers acting within definitely prescribed statutory limitations. Ibid., 127 So. at page 492. But, as in the case of any other statute, the execution of a tax statute or the exercise of taxing powers thereby granted cannot be made to depend upon the unbridled discretion or whim of a "statutory" board or individual or group of individuals. See Richey v. Wells, 1936, 123 Fla. 284, 166 So. 817; Whitney v. Hillsborough County, supra, 127 So. at page 493; Tarpey v. McClure, 1923, 190 Cal. 593, 213 P. 983. Cf. State ex rel. Taylor v. City of Tallahassee, 1937, 130 Fla. 418, 177 So. 719.
We are conscious of our duty to interpret a legislative Act so as to effect a constitutional result if it is possible to do so. We are, however, bound by the unambiguous terms of a statute; and we cannot help but conclude that the italicized provision of § 193.221, quoted above, has the effect of vesting in the owner of some record interest in the surface of the land an unbridled discretion as to when the authority granted by the Act to assess severed sub-surface rights for ad valorem tax purposes shall be exercised as to that particular tract of land. This is clearly an unauthorized delegation of the legislative power under the decisions cited above, and one that is particularly obnoxious in the case of the taxing power when we recall that "Taxation without representation" was the battle cry that precipitated the Revolution.
Moreover, the effect of the Statute is to authorize the tax assessor to do what this court has said that he cannot do  that is, systematically and intentionally omit from the tax rolls property of the same classification as plaintiff's. As stated in Arundel Corporation v. Sproul, 1939, 136 Fla. 167, 186 So. 679, 681:
"It is fundamental that all property should bear its just burden of taxation. If property owned by a person is assessed for taxation while property of other persons, having the same classification and subject under the law to be assessed for taxes and the assessing *38 officer systematically, intentionally and purposely omits from the assessment roll the property, it operates as a denial of the equal protection of the law and the property owner who has been discriminated against has a remedy."
The appellant tax officials seek to justify the statute in question as relating merely to the procedure for the collection of taxes, citing Ranger Realty Co. v. Miller, 1931, 102 Fla. 378, 136 So. 546. They argue that, under § 193.06, Fla. Stat., F.S.A., all lands must be assessed at their full cash value which, they say, presumably includes minerals; and that "the statute in controversy, rather than constituting a delegation of legislative power, provides a formula for determining how and to what extent the sub-surface fee owner shall bear his share of taxes, in cases where the sub-surface is held separately from the surface."
But it must be clear from what has been said before that the statute in question does not relate to "the application of the procedure or remedy" through which a tax duly levied and assessed is collected, which is what the court was concerned with in the Ranger Realty Co. case, supra. The particular portion of § 193.221 with which we are here concerned involves that facet of tax assessment relating to the ascertainment and listing of the property to be taxed and its ownership  certainly an exertion of sovereign power, see Louisville & N.R. Co. v. Amos, 98 Fla. 350, 123 So. 745, 747  and attempts to delegate to the owner of the surface the power to exercise an unrestricted discretion in carrying out this phase of the assessment process. As noted above, this the Legislature cannot do.
Moreover, the appellants' argument overlooks the provisions of Ch. 211, Fla. Stat., F.S.A., levying a severance tax on the production of oil and gas and providing, in substance, that the value of the surface of the land shall not be increased for ad valorem tax purposes by reason of the fact that oil or gas may, or does, exist under the surface of such land. § 211.13. And § 211.14 provides, as to separately owned sub-surface rights in oil or gas, that "the interests so severed or reserved shall, notwithstanding such severance or reservation, continue to be a part of the surface ownership for the purpose of all ad valorem taxation imposed by any taxing authority in this state." As we construe these provisions, they exempt from ad valorem taxation oil and gas in place, regardless of whether the title thereto is in the owner of the surface or in a separate ownership. By necessary implication, the Legislature must have intended, in enacting § 193.221, to repeal to some extent the tax exemption conferred by § 211.13, as to separately owned oil and gas rights. But there is nothing in § 193.221 to compel the conclusion that it was intended to repeal such exemption as to oil or gas rights still intact  that is, still owned by the owner of the surface. Nor does § 193.221 require the tax assessor to take into consideration the value of separately owned sub-surface rights in oil or gas in fixing the value of the surface, where not separately assessed against the owner of such sub-surface rights, and thus effect, by necessary implication, a repeal of the provisions of § 211.13 referred to above. It follows, therefore, that as to oil and gas rights, the argument of the appellants that the statute merely provides a procedure by which the owner of the sub-surface rights shall bear his fair share of a tax previously assessed entirely against the owner of the surface, is without merit.
The argument is more plausible as to mineral rights  such as phosphate  as to which there is no severance tax and the value of which apparently may be taken into consideration by the tax assessor in assessing the value of the land under which such minerals lie. Cf. Camp Phosphate Co. v. Allen, 1919, 77 Fla. 341, 81 So. 503. But here, again, we return inevitably to the proposition that § 193.221 does something more than allocate between the surface and the sub-surface ownerships, when a severance of title occurs, the value of their respective interests; the Act still is fatally *39 defective insofar as it attempts to delegate to the owner of the surface the legislative power of taxation, for the reasons above stated.
In the interest of brevity, we pretermit a discussion of the other constitutional questions here presented  including the charge that the tax authorized by the statute in question lacks the constitutional requirements of uniformity and equality prescribed by § 1 of Article 9, Fla. Const. For a case in point on this latter question, attention is directed to Federal Land Bank of Houston v. State of Texas, Tex.Civ.App. 1958, 314 S.W.2d 621.
The statute contained a severance clause in the usual statutory language  but we think the provision requiring the assessment of a separately owned sub-surface right only upon the written request of the owner of the surface cannot be separated from the remainder of the statute without doing violence to the intention of the Legislature; and, in fact, no contention is made by the appellants that any portion of the statute may be preserved, should this particular provision be stricken as invalid.
Accordingly, the decree of the Chancellor should be and it is hereby
Affirmed.
THOMAS, C.J., TERRELL, DREW, THORNAL, and O'CONNELL, JJ., and McCRARY, Circuit Judge, concur.