177 So.2d 665 (1965)
Robert D. MAHON, Appellant,
v.
COUNTY OF SARASOTA, a political subdivision of the State of Florida, Appellee.
No. 33762.
Supreme Court of Florida.
July 28, 1965.
Braswell & Brown, Kenneth E. Brown and Jackson S. Bradford, Venice, for appellant.
*666 Richard E. Nelson, Sarasota, for appellee.
ROBERTS, Justice.
This is a direct appeal from a decree upholding the validity of Chapter 63-1922, Special Acts of 1963, and enjoining the appellant, defendant below, from interfering with the enforcement of the Act by the County of Sarasota, plaintiff below and appellee here.
The Act in question  known as the Sarasota County Lot Clearing Act  provides, in substance, for the elimination, as nuisances, of accumulations of trash, refuse, filth, garbage, unsanitary or other noxious matter, and of heavy, dense or dank growths of weeds, grass, underbrush, palmettos, or other vegetation, which constitute a health, fire or traffic hazard. Only those accumulations of refuse or vegetation which are within 200 feet of a "structure" may be found to be a nuisance as a health or fire hazard; and to constitute a traffic hazard, the vegetation must be more than two and one-half feet in height and within fifty feet of an "intersection". The statute does not define the words "structure" and "intersection". The Act is applicable to property in the unincorporated area of Sarasota County. If the owner of the property fails to keep it free of the accumulations of refuse and vegetation denounced by the statute, then upon the oral or written complaint of any resident of the county the County sets in motion the machinery to "clear" the property of such accumulations.
The statute provides for an inspection by a County employee of the property about which a complaint is made. If in the opinion of the inspector a health, fire or traffic hazard exists, a written notice by mail (or constructive service by publication) is given to the owner or to the person to whom the property was last assessed on the county tax records, advising that the hazard will be eliminated by the County if the owner fails to do so within a specified period (ten days or more). A protesting owner is entitled to a public hearing before the Sarasota County Lot Clearing Board. If the owner fails to remove the hazard within the specified period, the County is authorized to "clear" the property of such hazard, either by using its own labor forces or by private contract, and to assess the cost of such work against the "cleared" property, as a lien thereon.
The appellant, who represents the owners of several lots against which complaints were filed, contends that the entire procedure for applying the Act is vague, indefinite, uncertain, arbitrary and subject to capricious whim, and thus violative of the due process and equal protection guaranties of the Florida Constitution, Sections 1 and 4, Declaration of Rights, Fla. Const., F.S.A., as well as an unlawful delegation of legislative power contrary to Section 1 of Article III, Fla. Const. We think there is merit to appellant's contentions.
Assuming, for the purpose of argument only, that the Legislature can validly authorize the destruction, as a nuisance, of vegetation and shrubs on private property, without compensation to the owner and at the owner's expense, cf. Corneal v. State Plant Board, Fla. 1957, 95 So.2d 1, 70 A.L.R.2d 845, and presumably on the basis of constructive notice only prior to such actual destruction (as to which, see State Plant Board v. Smith, Fla. 1959, 110 So.2d 401), such legislative exercise of the police power should be so clearly defined, so limited in scope, that nothing is left to the unbridled discretion or whim of the administrative agency charged with the responsibility of enforcing the Act. See Phillips Petroleum Co. v. Anderson, Fla. 1954, 74 So.2d 544; Lewis v. Florida State Board of Health, Fla.App. 1962, 143 So.2d 867, and cases cited. Yet the statute in question has left to the whim or caprice of the administrative body the question of what is a "structure" sufficient to convert an accumulation of refuse or vegetation from a non-nuisance to a nuisance. Nor do we think the statute is clear as to just how the *667 measurement of the distance of a particular shrub (which could as well be a cherished and valuable ornamental plant as a noxious weed) from the "intersection" is to be made in order to determine whether it constitutes a traffic hazard. Moreover, the legislative declaration of exactly what type of accumulations of refuse and vegetation will constitute a nuisance falls far short of setting a standard to guide the administrative body in exercising the authority granted to it by the Act.
The Legislature may invest administrative bodies with the power to determine facts as to which the legislative policy is to apply, provided that in doing so it "announces adequate standards to guide the ministerial agency in the execution of the powers delegated." Delta Truck Brokers, Inc. v. King, Fla. 1962, 142 So.2d 273. It cannot, however, consistent with Section 1 of Article III, Fla. Const., "delegate the power to enact a law, to declare what a law shall be, or to exercise an unrestricted discretion in applying a law." Lewis v. Florida State Board of Health, supra, 143 So.2d 867. Here, as in Husband v. Cassell, Fla. 1961, 130 So.2d 69, we must conclude that the statute in question is unconstitutional "in that it fails to sufficiently fix the standards to be applied and in effect delegates the application of the statute without sufficient limitations on the discretion of the [administrative body]". See also Barrow v. Holland, Fla. 1960, 125 So.2d 749; and City of West Palm Beach v. State ex rel. Duffey, 1947, 158 Fla. 863, 30 So.2d 491.
The statute appears to be vulnerable on another point, also. The Act does not require the County of Sarasota to undertake the abatement of the nuisances proscribed by the Act throughout the unincorporated areas of the County; it is only when a complaint is made by a resident of the County that the statute is activated and the administrative machinery prescribed by the statute for "processing" such complaint (to borrow the County's description of the administrative procedure) is set in motion. The appellant argues that this is contrary to the rule that the execution of a statute cannot be made to depend on the unbridled discretion of a single individual or an unduly limited group of individuals. We agree. We can see little, if any, distinction between this situation and that with which we were concerned in Cassady v. Consolidated Naval Stores Company, Fla. 1960, 119 So.2d 35. There, a statute authorized the Tax Assessor to assess subsurface mineral rights for taxation when title thereto was held separately from the ownership of the surface of the land, upon the written request of the owner of an interest in the surface land. In striking down the Act, this court said that the italicized provision
"* * * involves that facet of tax assessment relating to the ascertainment and listing of the property to be taxed and its ownership  certainly an exertion of sovereign power * * *  and attempts to delegate to the owner of the surface the power to exercise an unrestricted discretion in carrying out this phase of the assessment process. As noted above, this the Legislature cannot do."
It would appear also that the owner whose property has been destroyed as a result of a complaint, although other property similarly situated and containing a similar health, fire or traffic hazard has not been complained against and has thus not been touched, can validly contend that he has been denied the equal protection of the law. Cf. Cassady v. Consolidated Naval Stores Company, supra, 119 So.2d 35, 37; West Flagler Kennel Club v. Florida State Racing Commission, Fla. 1963, 153 So.2d 5; Eslin v. Collins, Fla. 1959, 108 So.2d 889, and cases cited.
The other points argued here by appellant have been considered and are either without merit or have been answered by what has been said before herein.
*668 For the reasons stated, the decree here reviewed upholding the validity of the statute should be and it is hereby
Reversed.
THOMAS, O'CONNELL and CALDWELL, JJ., concur.
DREW, J., dissents with opinion.
THORNAL, C.J., and ERVIN, J., dissent and agree with DREW, J.
DREW, Justice (dissenting).
Legislation of the kind involved here is designed to compel the indifferent citizen to do that which the good citizen does voluntarily. In the act under discussion, the Legislature declared in Section 2 the "* * * accumulations of trash, refuse, filth, garbage, unsanitary, or other noxious matter, and heavy, dense or dank growths of weeds, grass, underbrush, palmettos, or other vegetation, which might communicate fire or serve as a breeding place for or harbor insects, rodents, snakes or other pests or vermin, within two hundred (200) feet of any structure located in the unincorporated areas of Sarasota county, * *" constitute a nuisance. The Legislature further found that such conditions "* * * are detrimental and a menace not only to the public safety, health and welfare of the county of Sarasota and its inhabitants but also to the economic growth, stability and prosperity of said county and to its inhabitants." The Legislature further found "* * * that dense undergrowth, weeds, grass and the like on corner lots at street and road intersections materially impede vision when allowed to fill the space between the height of two and one half (2 1/2) and ten (10) feet above the center-line grades of the intersecting streets and roads in the triangular area bounded by the street lines of such corner lots and a line joining points along such street lines fifty (50) feet from the point of intersection, and such constitutes a traffic hazard, endangering the safety and welfare of the citizens and residents of Sarasota county."
There cannot be the slightest doubt of the power of the Legislature of this State to declare what shall constitute a nuisance.[1] Of course, such declaration would not be beyond judicial examination but it is difficult to conceive how the validity of the finding in this instance could be seriously questioned by anyone. If any act were ever designed to promote the general welfare of the community and dealt with a subject historically within its police powers, this is one. Moreover, the act carefully delineates the area of its operation and defines the limits within which the county may exercise the power to abate the declared nuisance. It relates only to land "within 200 feet of any structure"[2] or land in a limited area near intersecting streets and roads. It even goes further in its restrictions and limits the power of the county to such of the described conditions as create "a fire hazard, health hazard or traffic hazard" (emphasis added)  all of which are classic subjects for the exercise of the police power.
The portion of the act dealing with street intersections is designed to prevent blind intersections and to cut down the carnage which is taking place on the highways in every part of this country. It is not unreasonable to limit the height of vegetation in such areas. This Court has repeatedly and consistently upheld the power of governmental authorities to compel buildings to be set back along street intersections or on streets in the interest of the general welfare. Surely it is no invasion of any constitutional *669 right to require vegetation, particularly "dense undergrowth, weeds, grass and the like" to be similarly controlled. This act does not prevent the growth or maintenance of trees of the proper type, farm produce or other legitimate uses of the land in the questioned area. It relates only to "dense undergrowth, weeds, grass and the like."
It is, of course, true that legislation of this type must afford due process to the landowner. Due process requires only a reasonable notice and a reasonable opportunity to be heard. This act goes to great lengths to insure every affected property owner an opportunity to be heard at every phase of the proceedings. Moreover, the act clearly places the burden upon the public authorities to establish that the conditions above alluded to "creates a fire, health or traffic hazard" and an abuse of the power by the governmental authorities would be subject to appropriate judicial review.
I observe nothing in the act which offends constitutional principles, and this observation is applicable to that portion of the act prescribing the method for enforcing the payment of the cost of abating these nuisances when the property owner fails or refuses to do so.
I, therefore, dissent and would uphold the able trial judge who decreed this act to be valid.
THORNAL, C.J., and ERVIN, J., concur.
NOTES
[1] Cohen v. State, 37 So.2d 700 (Fla. 1948); Pompano Horse Club v. State, 93 Fla. 415, 111 So. 801, 810, 52 A.L.R. 51; Valdez v. State, 142 Fla. 123, 194 So. 388.
[2] Webster's Collegiate Dictionary, 5th Edition, defines structure as "something constructed or built, as a building, dam or bridge."