224 So.2d 262 (1969)
Fred O. DICKINSON, Jr., As Comptroller of the State of Florida, Robert Overstreet, As Tax Collector for Dade County, Florida, Arvida Corporation, a Florida Corporation, and E.B. Leatherman, As Clerk of the Circuit Court in and for Dade County, Florida, Appellants,
v.
Thornton DAVIS et al., Appellees.
ARVIDA CORPORATION et al., Appellants,
v.
Thornton DAVIS et al., Appellees.
Nos. 37068, 37069.
Supreme Court of Florida.
April 2, 1969.
Rehearing Denied May 20, 1969.
*263 Earl Faircloth, Atty. Gen., and Larry Levy, Asst. Atty. Gen., for Fred O. Dickinson, Jr., as Comptroller of the State of Florida.
Thomas C. Britton, County Atty., and Stuart Simon, Asst. County Atty., for Robert Overstreet, Tax Collector and E.B. Leatherman, Clerk of the Circuit Court. Woodrow M. Melvin, Jr., of Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, for Arvida Corp.
Shutts & Bowen, Miami, for appellees.
ADKINS, Justice.
This is a direct appeal taken from a final judgment of the Circuit Court declaring Ch. 63-355 (Fla.Stats. § 193.221, F.S.A.) to be unconstitutional for the reasons stated in Cassady v. Consolidated Naval Stores Company (Fla. 1960), 119 So.2d 35. *264 This statute relates to the assessment of mineral interests.
The appellant Arvida Corporation returned the mineral interests of appellees for taxation pursuant to Ch. 63-355. The appellees filed their complaint seeking to enjoin Arvida Corporation from applying for a tax deed to the mineral interest, as well as to enjoin the Clerk of the Circuit Court from issuing tax deeds with respect to the mineral interests. They also sought to have the tax assessments against the mineral interests declared void and all tax certificates previously sold cancelled. The final judgment granted the relief sought by appellees-plaintiffs.
The original statute, Ch. 57-150 contained the following provision:
"If a return is not made by the owner of the sub-surface rights, the duty is hereby imposed upon the tax assessor to assess said separate sub-surface rights for taxation and place it (sic) upon the tax rolls; provided that such separate assessment shall be required only when the owner of some record interest in said lands shall file with the tax assessor of the county, prior to April 1 of the year a written request for such separate assessment of such mineral, oil or other sub-surface rights." (Emphasis added.)
This Court in Cassady v. Consolidated Naval Stores Company, supra, held this law unconstitutional because it constituted an unauthorized delegation of legislative power. The Court also pointed out that the execution of a tax statute or the exercise of taxing powers thereby granted cannot be made to depend upon the unbridled discretion or whim of an individual or group of individuals.
After this decision, the Legislature enacted the present statute which reads as follows:
"Whenever the mineral, oil, gas, and other subsurface rights in or to real property in this state shall have been sold or otherwise transferred by the owner of such real property, or retained or acquired through reservation or otherwise, such subsurface rights shall be taken and treated as an interest in real property subject to taxation separate and apart from the fee or ownership of the fee or other interest in the fee. Such mineral, oil, gas and other subsurface rights, when separated from the fee, or other interest in the fee, shall be subject to separate taxation, when returned for taxation by the owner of the fee, or other interest in the fee, or the owner or claimant of such subsurface rights or interests, or any person, firm or corporation claiming by, through or under the subsurface owner or claimant. Such taxation shall be against such subsurface interest and not against the owner or owners thereof or against separate interests or rights in or to such subsurface rights." Fla.Stats. § 193.221(1), F.S.A. (Emphasis added.)
The Legislature is presumed to know existing law when a statute is enacted, Collins Investment Company v. Metropolitan Dade County (Fla. 1964) 164 So.2d 806, and, also, in re-enacting a statute the Legislature is presumed to be aware of constructions placed upon it by the Court. Delaney v. State (Fla. 1966), 190 So.2d 578. It necessarily follows that the Legislature in considering and passing a statute to replace one previously held unconstitutional by the Court intended to correct the constitutional defect causing the invalidation of the previous statute. It is never presumed that the Legislature intended to enact purposeless or useless legislation. Sharer v. Hotel Corporation of America (Fla. 1962) 144 So.2d 813.
It is common practice for each multiple owner in the same real property to be taxed separately as to his individual interest in same. Prior to the enactment of this law providing for separate assessment *265 of mineral, oil, gas and other subsurface rights, the fee title holder was placed in the position of paying taxes on the entire interest of the real property, including the sub-surface rights in same, which might be owned by other persons. The purpose of this law was to place upon those persons who own only the sub-surface rights in real property the obligation to pay a portion of the real property taxes proportionate to their interest in the whole.
The principal alleged deficiency in the statute is that it places upon the owner of the mineral, oil, gas and other sub-surface rights, or the owner of some other interest in the property, the duty of notifying the tax assessor of said separated ownership and requesting that the said interests be assessed separately. This means that the owner of the fee may pay the taxes on the entire property or, at his discretion, may notify the assessor of the separate ownership of the above-mentioned sub-surface rights in order that they may be taxed separately and then, the total valuation of the property should be modified to reflect the value of such rights.
The first sentence of Fla.Stats., § 193.221, F.S.A., the statute under attack, reads as follows:
"Whenever the mineral, oil, gas, and other sub-surface rights in or to real property in this state shall have been sold or otherwise transferred by the owner of such real property, or retained or acquired through reservation or otherwise, such subsurface rights shall be taken and treated as an interest in real property subject to taxation separate and apart from the fee or ownership of the fee or other interest in the fee."
Land may be divided horizontally as well as vertically, so that one person may own the surface and another the minerals underground. Where the fee in the mineral is severed from the fee in the surface, it is subject to separate taxation. 51 Am.Jur. Taxation, §§ 437, 452; Annot., 1916D L.R.A. 307. In fact, separate estates or interests in subsurface rights are taxable as real property or real estate under the tax statutes of many of the states. 4 Summers Oil and Gas (Perm. Ed.) § 784.
Unquestionably, the Legislature had the authority to subject this separate interest in real estate to taxation.
The second sentence of Fla.Stats., § 193.221, F.S.A., which causes the greatest concern, reads as follows:
"Such mineral, oil, gas and other subsurface rights, when separated from the fee, or other interest in the fee, shall be subject to separate taxation, when returned for taxation by the owner of the fee, or other interest in the fee, or the owner or claimant of such subsurface rights or interest, or any person, firm or corporation claiming by, through or under the subsurface owner or claimant."
All statutes and regulations, not in conflict with Fla.Stats., § 193.221, F.S.A., relating to the assessment and collection of ad valorem taxes on real property are, by the specific terms of this statute, applied to the separate assessment and taxation of subsurface rights, insofar as they may be applicable. Fla.Stats., § 193.221(3), F.S.A.
Therefore, the controversial second sentence quoted above should be considered in connection with the provisions of Fla. Stats., § 193.12, F.S.A., which reads as follows:

"Every person owning or having the control, management, custody, direction, supervision or agency of property of whatsoever character that is subject to taxation under the laws of this state, shall return under oath the same for taxation to the county assessor of taxes in the proper county, or to other proper officer, on or before April 1 of each and every year, giving the character and the value of the same, as required by law; upon failure to do so the assessment *266 and valuation made by the assessing officer or officers shall be deemed and held to be binding upon such owner or other person or corporation interested in such property, unless complaint is made of such assessment and valuation on the day set for hearing complaints and receiving testimony as to the value of any property, real or personal, as fixed by the county assessor of taxes." (Emphasis added.)
By virtue of the holding in Cassady v. Consolidated Naval Stores Company (Fla. 1960) 119 So.2d 35, the Legislature was aware that requiring such a separate assessment only when the owner of some record interest in the land filed a written request for such separate assessment constituted an unauthorized delegation of legislative power and was unconstitutional.
The Legislature, by the provisions of the statute under attack, declared that the subsurface rights would be subject to taxation under the conditions specified in the first sentence of the section. This brought into play the provisions of Fla.Stats., § 193.021, F.S.A. relating to the method of assessment of property and Fla.Stats., § 193.11, F.S.A. requiring the assessor to ascertain the names of all taxable persons and ascertain all taxable real estate.
In the event the assessor overlooked the ownership of mineral rights, a return for taxation could be made by those persons specified in the controversial second sentence of the statute under attack. In other words, the purpose of the second sentence was to specifically name the fee owner as one of those persons who could file a return covering the mineral rights in the manner specified in Fla.Stats., § 193.12, F.S.A., quoted above, even though the fee owner may not have the "control, management, custody, direction, supervision, or agency" of the mineral rights.
All Acts of the Legislature are presumptively valid, Village of North Palm Beach v. Mason (Fla. 1964), 167 So.2d 721, and the above construction does no violence to the Constitution.
The measure of valuation of mineral rights for the purpose of ad valorem taxation is the "just value" of such subsurface rights determined largely from their market value if placed on market for sale by a person willing to sell but not forced to sell to another person willing to buy but not forced to buy. If subsurface rights can be, and are severed by conveyance in various localities, fair market value, or just value, may be determined by comparable sales. This Court was confronted with valuations of mineral deposits in Camp Phosphate Co. v. Allen, 77 Fla. 341, 81 So. 503 (1919). The Court said:
"Valuations for taxation must have a just relation to the real and known value of the property assessed, and not to some unknown and speculative value, and there must be no substantial inequality in valuations in the various kinds and items of property that is subject to tax. There is no law requiring the assessor to prospect land to ascertain if it contains valuable mineral deposits; neither is there any law compelling the owner of land to extend $75 or $100 an acre prospecting his land for the information of a tax assessor."
The statute does not prescribe the manner or amount of assessment, as did the prior statute which was held unconstitutional.
In determining the value of same, the assessor may apply the methods provided by law, including consideration of the amounts paid for mineral, oil, gas and other sub-surface rights in the area as reflected by the public records. It should be recognized that such property rights in this State are generally conveyed either for possible mining purposes, or to eliminate clouds upon real property titles caused by the separate ownership of same *267 from the ownership of the other interests in the land and improvements thereon.
This law does not reduce assessments or eliminate any property from taxation.
The total value of other interests in the realty, including improvements, should have little relationship to the value of the subsurface interests and it is, therefore, improper to equate the value of same in each instance to the value of the whole.
Section 193.221 of the Florida Statutes, F.S.A. is valid and constitutional. Although the assessor probably erred by fixing the assessed valuation of the subsurface rights at 10 per cent of the total valuation of the real property in question, the owners are barred from complaining here because they failed to exhaust their administrative remedies and institute suit as provided by law. Fla.Stats. § 192.21(2), F.S.A., 23 F.L.P., Taxation, § 249.
The final judgment is reversed and the cause is remanded with directions to enter a judgment dismissing the complaint with prejudice.
ERVIN, C.J., and ROBERTS and BOYD, JJ., concur.
DREW, J., dissents with opinion.
THORNAL and CARLTON, JJ., dissent and concur with DREW, J.
DREW, Justice (dissenting).
The former statute,[1] enacted in 1957, was declared invalid in Cassady v. Consolidated Naval Stores, Fla. 1960, 119 So.2d 35, and the decree in the present case holds that the amendment did not eliminate the defect defined in the Cassady opinion as follows:
"* * * We cannot help but conclude that the italicized provision of § 193.221, quoted above, has the effect of vesting in the owner of some record interest in the surface of the land an unbridled discretion as to when the authority granted by the Act to assess severed sub-surface rights for ad valorem tax purposes shall be exercised as to that particular tract of land. This is clearly an unauthorized delegation of the legislative power * * *."
It is plain from a comparison of the language of the original and amended statutes that the first sentence in each provides severed subsurface rights shall be "subject" to separate taxation. By a proviso the original law made the duty of separate assessment conditional first on a return by the owner of the rights and second, as an alternative in the absence of such return, by further proviso that "separate assessment shall be required only when" a written request shall be filed by the owner of some record interest in the lands. The amended law omits from the initial sentence the proviso that the owner of the rights shall return same for taxation, and by the second clause simply repeats the provision that such rights "when separated from the fee" shall be subject to separate taxation, adding: "when returned for taxation by the owner of the fee, *268 * * * or the owner or claimant of such subsurface rights. * * *"
The language last quoted clearly qualifies the provision of the law that such rights "shall be subject to separate taxation." Even if the word "when" is accorded the meaning urged, i.e. "at the time of" as opposed to "if," the latter clause in my opinion remains a limitation or condition on the right or duty of separate assessment imposed by the law. The provision is not simply that the owner of any of the identified interests in the property may return severed subsurface rights for separate assessment (the propriety of which may not, of course, be determined in this appeal).[2] Instead the provision is that such rights shall be subject to separate taxation "when separated from the fee" and "when returned for taxation" as specified. Both factors, severance and return for taxation, are expressed and imposed with equal clarity as conditions precedent to the mandate that "such rights * * * shall be subject to separate taxation. * * *" I do not agree that the initial sentence of the law stands independent and unqualified by the stated condition immediately following, or in the contention that the omission of the word "only," whatever the intent, is sufficient to eliminate the stated condition remaining in the law.
I agree with the conclusion of the trial court that the provision still vests in the specified parties the right to control the execution of the statute, or, in the language of the former opinion, to determine "when the authority granted by the Act to assess severed sub-surface rights for ad valorem tax purposes shall be exercised as to that particular tract of land." The law and reasoning applied in the Cassady opinion compels an affirmance of the decree.
I dissent.
THORNAL and CARLTON, JJ., concur.
NOTES
[1] The statute formerly read: "Whenever the * * * rights * * * shall have been * * * transferred * * * such rights shall be taken and treated as real property and shall be subject to taxation separate from the fee; provided, however, that such sub-surface rights shall be assessed as separate property and separate from the fee, and it shall be the duty of the owner of such sub-surface rights to make separate return thereof for taxation by the first day of April. If a return is not made by the owner of the sub-surface rights, the duty is hereby imposed upon the tax assessor to assess said separate sub-surface rights for taxation and place it upon the tax rolls; provided that such separate assessment shall be required only when the owner of some record interest in said lands shall file with the tax assessor of the county, prior to April 1 of the year a written request for such separate assessment of such mineral, oil or other sub-surface rights. * * *" (e.s.)
[2] Problems presented by related statutory provisions, as well as constitutional inhibitions, are treated in a limited fashion in the Cassady opinion, 119 So.2d 35, 38.