QUESTION: Should the allowable millage under Ch. 74-535, Laws of Florida, which could be levied by the Martin County School District after rollback or the allowable millage permitted by s. 236.25, F.S., as amended, be utilized for purposes of computing school district fund distribution?
SUMMARY: The 1974-1975 fiscal year allocation and distribution of state funds to the Martin County School Board under the Florida Education Finance Program (s. 236.081(7), F.S.) should be calculated or computed by utilizing the procedure set forth in Ch. 74-227, Laws of Florida. Such calculation should be based on the maximum allowable millage as prescribed by s. 236.25, F.S., as amended (8 mills), and not on the allowable millage under Ch. 74-535, Laws of Florida (6.4538 mills). The mandate of Ch. 74-535 to roll back school tax millage by the school board did not apply to the 1974 tax roll because the Legislature has not expressly so provided in the act itself. The applicability or nonapplicability of such law to the 1974 tax roll could not constitutionally be reposed in the hands of the county property appraiser. The allowable millage permitted under s. 236.25, F.S., should be utilized for purposes of computing school district funds and allocation. Chapter 74-227, Laws of Florida, amended several statutes, including s. 236.081(7)(b), F.S. The act took effect July 1, 1974. Chapter 74-535, Laws of Florida, is a local or special law pertaining solely to Martin County and contained therein the following: Section 6. Except as otherwise provided, this act shall take effect upon becoming a law; provided however, that this act shall stand repealed and of no further force or effect after July 1, 1976. (Emphasis supplied.) It became law without the Governor's approval and was filed in the office of the Secretary of State July 5, 1974. Section 5 thereof provides in part: The provisions of this act shall become operative and effective when this act is approved by a majority of the electors voting in the general election to be held in Martin County on November 6, 1974. (Emphasis supplied.) You have advised that the act was approved by a majority of the electors on that date, thereby becoming effective and operative. The substance of the Martin County Act, Ch. 74-535, supra, is to require a millage rollback similar to that found in ss. 193.03 and 193.031, F.S. 1965 and 1967. It requires the board of county commissioners, the school board, and all other governing boards or governing authorities of all other taxing districts in Martin County, including municipalities, whose taxes are assessed on the tax roll prepared by the county assessor, to reduce the millage to be levied by each such governing authority from what it was in the preceding year proportionate to the increase of the general level of assessed valuation of property over the preceding year. (See s. 1, Ch. 74- 535.) The effect of such legislation is to maintain current expenditures to those required for the prior fiscal year. Provision for necessary increases is contained in the act. Excepted from the thrust of the act are any situations where the governing authority or body is required by law ". . . to maintain a higher millage level in order to participate in state revenue sharing, or any other matching formula for funding of state or local governmental programs or projects." (Emphasis supplied.) As to the applicability of this exception to the instant situation, suffice it to say the Legislature has not provided any law whereby the governing authority involved, the school board, is required to maintain a higher millage level. Section 236.25, F.S., is a legislative restriction on the maximum, not the minimum, millage which a school board may levy and still participate in the state allocation of funds for current operation as prescribed by s. 236.081(5), F.S. You have advised that after elector approval of Ch. 74-535, supra, the Martin County School Board, in compliance with the new law, rolled back the millage. The maximum allowable millage, including the 10 percent and 5 percent increases under the local rollback law, is 6.4538, and the required local effort is 6.3373 mills. This (6.3373) is the millage which must be levied in order to participate in the Florida Educational Finance Program. The Martin County School District, after due consideration, decided to levy 6.3373 mills which is the minimum required to participate in the Florida Educational Finance Program. You advise that the Department of Education is proposing to use 6.4538 mills, which is the maximum allowable under the local millage law, as the millage rate in calculating the "hold harmless" portion of the Florida Education Finance Program in lieu of the 8-mill maximum provided by general law. The general law referred to is s. 236.081(7), F.S., as amended by Ch. 74-227, Laws of Florida. It provides in part: 4. The amount determined in subparagraph 3. shall be the minimum level of funding for each district for the 1974-1975 fiscal year. Such amount shall include the following: a. The state allocation for current operation, as provided in paragraph (a), exclusive of all categorical programs, with the exception of student transportation, elementary school counselors, and occupational specialists and placement specialists; and b. The calculated yield of the allowable nonvoted millage during the 1974-1975 fiscal year on 95 percent of the 1974 calendar year nonexempt assessed valuation of the district for school purposes as prescribed in s. 236.25. (Emphasis supplied.) The italicized language is significant. Section 236.25, F.S., as amended by Ch. 74-227, Laws of Florida, provides: (1) Each school board desiring to participate in the state allocation of funds for current operation as prescribed by s. 236.081(5) shall levy no more than 8 mills of tax on the nonexempt assessed valuation for school purposes of the district exclusive of millage voted under the provisions of ss. 9(b) and 12 of Art. VII of the State Constitution. (Emphasis supplied.) Thus the allowable nonvoted millage prescribed in s. 236.25 is 8 mills. However, you advise that the Department of Education has taken the position that since there was a millage rollback as required by Ch. 74-535, supra, the allowable millage to be used in computing its distribution to the Martin County School Board should be 6.4538 mills and not 8 mills. The question raised by your inquiry is significant and involves all school districts in the state, the effect being that if the allowable millage under the aforecited local law is used, the Martin County School District will receive approximately $1,000,000 more than it would otherwise, you advise. Under the local rollback law, this would be Martin County's allowable millage including increases as provided in that act. It is my opinion that the millage to be utilized should be the allowable millage authorized in s. 236.25, F.S., as amended, or 8 mills. The language of the statute is significant. The Legislature has specifically declared that the measurement shall be the "allowable nonvoted millage . . . as prescribed in s. 236.25" which is 8 mills. The Legislature did not use the term "actual millage levied" or the term "allowable nonvoted millage . . . as prescribed by s. 236.25 or by special or local law." If the proposed millage rollback law had not been approved by the electors, it is clear that s. 236.081(7)(b)4., F.S., would control. It is illogical to presume that the Legislature intended to use one standard for 66 county school districts in the state and a different standard for the Martin County School District. The entire spectrum of the Florida Education Finance Program is embraced in Ch. 236, F.S. Chapter 74-535, supra, does not have any direct bearing on, or relationship to, the allocation or distribution in question. Nowhere in Ch. 74-535 is there any legislative mandate that the millage levied by the school board shall control state education fund allocation or distribution for fiscal year 1974-1975. Section 4 of the act provides: Local taxing authorities shall maintain a millage level necessary to participate in state revenue sharing, maintain the local required effort under the Florida education finance program or any other matching formula for funding of state or local governmental programs or projects. (Emphasis supplied.) As you will note, this is a legislative mandate to the local taxing authorities to maintain a millage level necessary to participate in state revenue sharing, and where the school board is concerned, a millage level to maintain the local required effort under the Florida Education Finance Program. This expressly contemplates the laws governing revenue sharing and the Florida Education Finance Program, and recognizes the continued force and existence of such laws and programs. It is further recognized in s. 1, Ch. 74-535, supra, wherein the proviso is found which I have previously mentioned herein, to the effect that if there is a requirement of law that a higher millage level be maintained, the rollback mandate shall not apply. Thus, the law in two places recognizes the continued force and effect of other laws, including the laws relating to revenue sharing and the Florida Education Finance Program. The title to Ch. 74-535, supra, contains no language which would indicate that the Florida Education Finance Program is affected by the body of the act or that the Martin County School District's allocation or distribution of state funds pursuant to that program is to be changed. The title and the body of the act mention and discuss only the subject of millage rollback and connected matters. Accordingly, the doctrine of repeal by implication would not be applicable. There is no inconsistency or repugnancy between Ch. 74- 535, supra, and Ch. 74-227, supra. One relates solely to millage rollback, the other to public school financing by the state. Where educational financing is involved, only Ch. 236, F.S., as amended, and other statutes dealing directly with the subject would be pertinent. Similarly, there is no basis for the application of the doctrine that the special act should prevail over, or operate as an exception to, the general act, Ch. 236, F.S. Here the special act is on a subject totally foreign to state school fund allocation or distribution. This rule or doctrine is applicable only where the two acts are on the same subject and are totally irreconcilable and repugnant. Here the two acts are not on the same subject and are completely reconcilable. (See AGO 071-395 and the authorities cited therein.) There is a strong presumption that a statute does not impliedly repeal another statute enacted at the same session of the Legislature. [See] (82 C.J.S. Statutes s. 297, p. 509). This principle is especially applicable as between two statutes passed at the same session of the Legislature. (id.) Even when the two statutes relate to the same subject matter, the presumption against implied repeal is strong and they are to be construed together so as to reconcile them and to give effect to each, thereby avoiding an implied repeal rather than to infer that one destroys the other. (id.) The Department of Education's position apparently is that the special act would operate as an exception to the general law insofar as the Martin County School District is concerned, thereby repealing the general law insofar as it relates to the allocation or distribution of state funds to the Martin County School Board from the education finance program. The previous statements herein compel a rejection of that contention. Here both laws are readily reconciled by pointing out they relate to different subjects. Ch. 236, F.S., as amended, relates to the standards to be followed in allocating and distributing state funds to the several school boards for current operations. Those standards are clear and precise, designed to produce an equitable allocation and disbursement to all 67 school districts, applying the same standards to all. Cf., Art. VII, s. 8, State Const., providing that state funds may be appropriated to the several school districts upon such conditions as may be provided by general law. The special or local act does not change that but relates solely to millage rollback in Martin County. In 82 C.J.S. Statutes s. 299, at p. 517, it is stated: On the other hand, an implied repeal of a general law by a special act is not favored, and will not be assumed. In order to constitute a repeal, the conflict between the special act and the prior general statute must be of an irreconcilable character, and it has been said to be a general rule of judicial construction that a general law cannot be repealed by a special or local law. A repeal does not take place where there is no manifest repugnancy between the provisions of the two acts and the special act is not obviously intended as pro tanto a substitute for the general act. (Emphasis supplied.) In s. 292, at p. 497, it is stated: As a general rule, there can be no implied repeal of one act by another unless both acts deal with, or relate to, the same subject matter. However, a statute is not to be deemed repealed merely by the enactment of another statute on the same subject. The question is one of legislative intention. One of two affirmative statutes on the same subject matter does not repeal the other if both can stand, as where they are cumulative. The court will, if possible, give effect to all statutes covering, in whole or in part, the same subject matter where they are not absolutely irreconcilable and no purpose of repeal is clearly shown or indicated. (Emphasis supplied.) As has been shown, the two acts are easily reconcilable and relate to different subjects. The special act contains no language stating that the allowable millage thereunder would control insofar as the allocation and distribution of state funds for public school purposes are concerned. Contrarily, the only exception found in the special law is that found in s. 4 thereof requiring local taxing authorities to maintain a millage level necessary to participate in state revenue sharing and to maintain the local required effort under the Florida Education Finance Program. Had the Legislature intended to substitute the allowable millage under the local act for that provided by s. 236.081(7), F.S., for purposes of computing the state fund, allocation, or distribution to the school board, it could have easily used language to that effect instead of requiring a millage level to be maintained to meet the "local required effort" under the education finance program. Accordingly, the conclusion is inescapable that the local act relating solely to millage limitation or rollback in Martin County was never intended to alter or change the state distribution formula for the Florida Education Finance Program. In approving the local law, the electors of Martin County voted to restrict the school board's millage, except to the extent ". . . necessary to participate in state revenue sharing . . ." and to the extent necessary to ". . . maintain the local required effort under the Florida Education Finance Program. . . ." The local required effort is 6.3373 mills which is exactly what the school board decided to levy. The same conclusion is reached through another process of reasoning. Chapter 74-535, supra, was an act which was to become operative and effective only if and when the act was approved by a majority of the electors voting in the general election to be held in Martin County on November 6, 1974. If the act had not become effective, then the Martin County School Board would be in the same position in which it finds itself today insofar as being funded like all other school boards in the state. The act itself contains no language whatsoever indicating that the requirements of the act are to operate on the tax roll for the tax year commencing January 1, 1974. Cf., AGO's 075-32, 069-26, and 068-87. Although the act relates only to millage, millage is an integral part of the ad valorem tax process. Had the millage been certified back in July or thereabouts as it should have been, the county property appraiser would have at that time been subject to the law as it existed at that time, which body of law would not include the local act pertaining to Martin County. It is illogical and inconsistent with reason to presume that the Legislature intended that the applicability or nonapplicability of the act to the tax roll for 1974 be left to the whim of an officer such as the property appraiser, or, for that matter, any officer. Such would lead to the conclusion that the Legislature delegated its authority to make law and to determine the effective or operative date of such law to the property appraiser. If the property appraiser then timely certified the roll, the local law would not apply to the tax roll for that year, but if he did not, then it would apply to the tax roll for that year. I cannot believe this to be the intent of the Legislature for, as mentioned above, this would squarely lead to the conclusion that the Legislature had improperly delegated its authority to determine the applicability of the law to that year's tax roll to the property appraiser. The Legislature makes the law, not the property appraiser. Cassady v. Consolidated Naval Stores Co., 119 So.2d 35 (Fla. 1960). A construction of a statute should not be utilized which would lead to the conclusion that the law was unconstitutional. (See State ex rel. Ervin v. Cotney, 104 So.2d 346). The general rule pertaining to taxing statutes as being intended to operate prospectively only and not retroactively is found in State v. Green, 101 So.2d 805
(Fla. 1958). In that case the court stated at p. 807: There can be no conclusion but that the legislature intended merely to raise the amount of the tax within the limit fixed in the Constitution, Sec. 1, Art. IX, F.S.A. In the title of the act in question a reader was informed only that § 199.11 was being amended by increasing the amount of the tax on "class A and class B intangible personal property" and that in the act an "effective date" was provided. There was no notice that the increased tax would be applied in the tax year 1957. (Emphasis supplied.) Continuing therein, the court stated: We have recognized the presumption that a legislative act operates prospectively unless the intent that it operate retrospectively is clearly expressed. Larson v. Independent Life Accident Ins. Co., 158 Fla. 623,29 So.2d 448. Further therein the court stated: In Cragin v. Ocean 
Lake Realty Co., 101 Fla. 1324, 133 So. 569, 135 So. 795, this court recognized the general rule that an act should never be construed retrospectively unless that was clearly the intention of the legislature and in Laney v. Board of Public Instruction for Orange County, 153 Fla. 728, 15 So.2d 748, 750, that statutes "are regarded as prospective in their operation unless the language * * * requires it to be given a retroactive operation." (Italics supplied.) In conclusion the court stated: There is positively nothing in the title of the statute under study to inform a reader it contained a provision that it would operate retrospectively, or in the body "clearly" stating that purpose except the date it would become effective, a date having no significant relationship with the first day of a tax year otherwise fixed by law. (Emphasis supplied.) The reason for these basic principles was recognized by the court at p. 808: It seems to us that we would have to discard the wellestablished rule were we to decide that by fixing an effective date exactly midway between the first days of the 1957 and 1958 tax years the legislature meant that the increase should become applicable on the former. If uniformity of the taxing process is to be maintained to the convenience of taxpayers as well as tax gatherers and the rule is to be perpetuated there can be only one logical conclusion and that is that the act should be operative prospectively. (Emphasis supplied.) (Also see Florida East Coast Railway Co. v. City of Miami, Fla. App.,299 So.2d 152.)
In applying the rule set forth above to the special or local act at hand it is clear that nowhere therein is there any statement of legislative intent, either in the title of the act or the body of the act, to the effect that the act shall apply to the 1974 tax roll. And the reasons therefore are readily apparent from the disruption that can be brought about by altering a taxing process during the tax year. The tax laws which are applicable on January 1 of any given year control the tax rolls for that year unless subsequent legislation is enacted during the tax year stating clearly in the title and the body of the act thereby advising all involved, interested, or affected by the act that it is to apply to the tax roll for that year. There is a total absence of any such legislative language or purpose in either the title or the body of Ch. 75-535, Laws of Florida. By way of comparison Chs. 63-250 and 65-258, Laws of Florida, which were the genesis for ss. 193.03 and 193.031, F.S. 1965, specifically provided that the acts were to become effective January 1, 1964, and January 1, 1966, respectively. Had the special act involved contained similar language, the entire situation would not have occurred. However, it is certain that the Legislature knew of the requirement that the rolls be certified by the county property appraiser in July of each year, but that extensions were common for various reasons. Had it intended to make the law apply to the tax roll and millage for tax year 1974, it would have so provided by specific language rather than to leave the applicability or nonapplicability of the law for that year to the whim of an officer or to unforeseen contingencies which could delay certification of the roll until after the election whereby the law became operative. It should be remembered that the decision to participate or not to participate in the State Educational Finance Program remains at the local level. The amount which each school district or school board receives from the state varies according to whether or not a particular school board qualifies and according to the formula used for computation under the program, but the formula is identical for all school districts and is tied to the standard of "full time equivalent student." For instance, Alachua, Baker, and Bay Counties reflect a "decrease per FTE" of minus 31.79, minus 66.01, and minus 98.25, respectively, while Escambia, Flagler, and Hamilton Counties reflected 3.42, 56.03, and 23.60, respectively. Martin County reflected a figure of 3.19 which would then be applied to the "1974 FTE" unweighted to produce an amount of $26,835 ($8,412.14 x 3.19). Presumably the electors of Martin County, through approval of Ch. 74- 535, supra, chose to restrict the allowable millage for the school board and the other taxing officials, except so far as required to maintain the ". . . local required effort under the Florida Education Finance Program. . . ." Assuming, but without deciding, the question of whether Martin County School Board under the local law could increase its receipt of state funds from the education finance program through manipulation of the millage levied, it is apparent that the special or local act under consideration does not do so. Your question as hereinabove stated is answered in the negative.