394 So.2d 989 (1981)
John E. BIGLER, Jr., Michael H. Cates, Grant W. Bailey, Charles C. Bundschu, Jr., Frank C. Lawson, Hugh J. Morgan, Rogers C. Stevens, Helen Trandel, the Organizers of the Lower Keys State Bank (Proposed), Appellants,
v.
DEPARTMENT OF BANKING AND FINANCE, and Gerald A. Lewis, Comptroller of Florida As Head of Said Department, Appellees.
No. 56417.
Supreme Court of Florida.
February 19, 1981.
*990 Larry Levy of Dickinson, Levy & Taylor, Tallahassee, for appellants.
Eugene J. Cella, Gen. Counsel, and S. Craig Kiser and Karlyn Anne Loucks, Asst. Gen. Counsels, Tallahassee, for appellees.
SUNDBERG, Chief Justice.
By direct appeal, appellants seek review of a decision of the District Court of Appeal, First District, reported at 368 So.2d 449. Because the district court initially and directly passed upon the constitutionality of a state statute, we have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution (1972). We affirm.
On June 17, 1974, appellants submitted to the Department of Banking and Finance an application for authority to organize a corporation to conduct a general banking business on Big Pine Key, Monroe County, Florida. By letter dated March 28, 1975, the Department required that all pending applications for bank charters be resubmitted without an additional filing fee. Appellants complied by filing a new application on March 31, 1976, and sent additional requested information to the Department in May of 1976.
In a memorandum dated July 8, 1977, the Department advised appellants that their application would be processed pursuant to chapter 77-453, Laws of Florida, effective June 30, 1977, in conjunction with the emergency rules adopted by the Department to implement chapter 77-453. Appellants promptly acknowledged receipt of this memorandum, apparently without opposition to its provisions.
State bank examiners conducted a field investigation in October of 1977 and submitted their report on November 1, 1977. The Department rendered its final order denying appellants' application on December 22, 1977.
Appellants filed a petition for writ of certiorari in the district court, alleging that the controlling statutory provisions, subsections (1)(b) and (c) of section 659.03, Florida Statutes (1977), improperly delegated legislative authority to the Department of Banking and Finance. They also asserted that the procedures employed in evaluating their application deprived them of due process. The District Court of Appeal, First District, rejected these arguments and affirmed the agency action.
Appellants renew their assault upon the constitutionality of section 659.03(1)(b) and (c) in this Court. They contend that like the statute regulating establishment of cemeteries held invalid in Dickinson v. State, 227 So.2d 36 (Fla. 1969), section 659.03 is so lacking in legislative standards and guidelines that it unlawfully delegates legislative authority.
We are unpersuaded by appellants' argument. In relevant part, the legislative scheme for the evaluation of banking applications is contained in section 659.03(1) and (2):

*991 (1) Upon the filing of an application, the department shall make an investigation of:
(a) The character, reputation, financial standing and motives of the organizers, incorporators and subscribers in organizing the proposed bank or trust company.
(b) The need for banking or trust facilities or additional banking or trust facilities, as the case may be, in the community where the proposed bank or the principal office of the proposed trust company is to be located, giving particular consideration to the adequacy of existing banking or trust facilities and the need for further banking or trust facilities in the locality.
(c) The present and future ability of the community to support the proposed bank or the principal office of the proposed trust company and all other existing banking or trust facilities in the community.
(d) The character, financial responsibility, banking experience, and business qualifications of the proposed officers.
(e) The character, financial responsibility, business experience, and standing of the proposed stockholders and directors.
(2) The department shall approve or disapprove the application, in its discretion, but it shall not approve such application until, in its opinion:
(a) Public convenience and advantage will be promoted by the establishment of the proposed bank or trust company.
(b) Local conditions assure reasonable promise of successful operation for the proposed bank or the principal office of the proposed trust company and those banks or trust companies already established in the community.
(c) The proposed capital structure is adequate.
(d) The proposed officers and directors have sufficient banking or trust experience, ability and standing to assure reasonable promise of successful operation.
(e) The name of the proposed bank or trust company is not so similar as to cause confusion with the name of an existing bank.
(f) Provision has been made for suitable banking house quarters in the area specified in the application.
Reading the provisions of subsections (1) and (2) in pari materia, it is apparent that the legislature in subsection (1) has delineated the scope and subject matter of the Department's investigation into each banking application. The facts derived from that investigation will then serve as a basis for the six conclusions which, under subsection (2), must be reached before the Department may approve an application. The terms in section 659.03(1)(b) and (c), seized upon by appellants as vague and indefinite, are defined and clarified by the criteria in section 659.03(2)(a) and (b). It thus becomes clear that the Department, its scrutiny of banking applications channelled by the above statutory provisions, implements the law rather than makes it. See National Bank of Tampa v. Green, 175 So.2d 545, 550 (Fla. 1st DCA 1965); McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977).
This case is unlike Dickinson v. State, supra, where the only legislative standard imposed on the comptroller when considering an application for operation of a cemetery was that there exist a need for cemetery service in the area. As contrasted with the statutory scheme here under consideration, no criteria for assessment of need were supplied by that statute.
In processing appellants' application, the Department followed the procedures for notice and hearing outlined in chapter 77-453, Laws of Florida, which amended section 120.60(3), Florida Statutes (1977). Because their application was filed prior to 1977, appellants contest the use of the amended procedures to their case. Section 7 of chapter 77-453, however, belies this contention. It provides the only exceptions to the new act:
This act shall not apply to any contested application which has been referred to the Division of Administrative Hearings by the agency on the effective date of this act, nor shall the time limit for automatic *992 approval contained in paragraph (c) of section 120.60(3), Florida Statutes, as created by this act begin until the effective date of this act for those new bank, trust company, savings and loan or credit union applications which were on file with the department on the effective date of this act.
Since appellants' application was never referred to the Division of Administrative Hearings, the act was unmistakably intended to apply to it.[*]
Appellants' due process attack on the procedures employed in their case is unavailing.
Accordingly, the decision of the District Court of Appeal, First District is affirmed.
It is so ordered.
ENGLAND, ALDERMAN and McDONALD, JJ., concur.
ADKINS, J., dissents with an opinion.
ADKINS, Justice, dissenting.
I dissent.
The question before us is whether the standards and guidelines found in the statute are sufficiently clear and definite so as to apprise those affected by the statute as to what must be done in order to comply therewith. The standards and guidelines in the statute have to be sufficiently clear and definite that a court can examine the statute, measure the action of the state agency against the statute, and be able to tell whether or not the agency acted correctly. Subsections (1)(b) and (c) of section 659.03, Florida Statutes (1977), do not do this. There is no way this Court or any court can apply the statute to a specific set of facts or circumstances and ascertain whether or not the action of the department was authorized and consistent with the statute.
The department is required to make an investigation of "the need for banking or trust facilities or additional banking or trust facilities." Does the statute demand that a given number of residential dwellings must exist to establish a need? Does the statute mandate there must be a certain percentage of new commercial businesses to establish need or that there must be a mixture of residential and commercial businesses to establish a need? Although the statute is definite in providing there must be a "need" before a banking charter is issued, there is nothing in the statute to establish guidelines or directives in determining the "need" for banking facilities.
This indefinite need must exist "in the community where the proposed bank or principal office of the proposed trust company is to be located." The terms "community" and "locality" are not defined in the statute and the statute offers no assistance as to how a determination of the meaning of such terms is to be made.
There is no way that this Court or any court can review the action of the department and determine whether there is a "need" in the "community". In the practical application of this statute, the permitting of a bank charter rests entirely within the "discretion" of the department.
In Dickinson v. State, 227 So.2d 36, 37-38 (Fla. 1969), we said:
The exact meaning of the requirement of a standard has never been fixed. The exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in regulating enactments under the police power. However, when statutes delegate power with inadequate protection against unfairness or favoritism, and when such protection could easily have been provided, the reviewing court should invalidate the legislation. In other words, the legislative exercise of the police power should be so clearly defined, so limited in scope, that nothing is left to the unbridled discretion or whim of the administrative agency charged with the responsibility of *993 enforcing the act. Mahon v. County of Sarasota, 177 So.2d 665 (Fla. 1965).
and
Fla. Stat., § 559.39, F.S.A., does not include any rule which defines even generally the terms "need for a cemetery" and "need for further facilities." The effect of the statute is to confer upon the defendant the authority to grant approval to one yet withhold it from another, at whim, and without guides of accountability.
The Court in Dickinson, supra, held that the statute was unconstitutional.
In my opinion the statute is unconstitutional and the decision of the district court of appeal should be quashed.
NOTES
[*] Moreover, as noted previously, the Department of Banking and Finance notified appellants in July, 1977, that their application would be processed pursuant to chapter 77-453. Appellants lodged no objection to the use of the amended procedures, thereby waiving any right to complain at this late stage. See also § 120.72(2)(a), Fla. Stat. (1977).