COWART, Judge.
This case involves the constitutionality of section 193.481, Florida Statutes (1982), which imposes ad valorem taxes on several subsurface mineral rights, and problems relating to the uniform assessment and valuation of such rights within a multi-county taxing district.
Appellees/cross-appellants all own severed subsurface mineral rights to land in Volusia County.[1] These rights were valued and assessed separately from the surface rights for ad valorem taxation purposes. This appeal is from a consolidation of thirteen actions in which appellees/cross-appel-lants disputed the proper assessment of ad valorem taxes against those rights and the valuation of the rights.
The Volusia County property appraiser separately valued and assessed the severed subsurface mineral rights under the authority of section 193.481, Florida Statutes (1979). The relevant portions of section 193.481, Florida Statutes (1979) (formerly section 193.221, Florida Statutes (1961)) are as follows:
(1) Whenever the mineral, oil, gas, and other subsurface rights in or to real property in this state shall have been sold or otherwise transferred by the owner of *1111 such real property, or retained or acquired through reservation or otherwise, such subsurface rights shall be taken and treated as an interest in real property subject to taxation separate and apart from the fee or ownership of the fee or other interest in the fee. Such mineral, oil, gas, and other subsurface rights, when separated from the fee or other interest in the fee, shall be subject to separate taxation. Such taxation shall be against such subsurface interest and not against the owner or owners thereof or against separate interests or rights in or to such subsurface rights.
(2) The property appraiser shall, upon request of the owner of real property who also owns mineral, oil, gas, or other subsurface mineral rights to the same property, separately assess the subsurface mineral right and the remainder of the real estate as separate items on the tax roll.
(3) Such subsurface rights shall be assessed on the basis of a just valuation, as required by s. 4, Art. VII of the State Constitution, which valuation, when combined with the value of the remaining surface and undisposed of subsurface interests, shall not exceed the full just value of the fee title of the lands involved, including such subsurface rights.
(4) Statutes and regulations, not in conflict with the provisions herein, relating to the assessment and collection of ad valorem taxes on real property, shall apply to the separate assessment and taxation of such subsurface rights, insofar as they may be applied.
Prior to 1957 in Florida subsurface mineral rights separately owned from the surface land were not separately assessed for ad valorem tax purposes. Chapter 57-150, Laws of Florida (Section 193.221, Florida Statutes (1961)), provided in substance (as does present section 193.481) that such severed subsurface mineral rights “shall be taken and treated as real property and shall be subject to taxation separate from the fee.” However, under the original act the duty of the tax assessor to separately assess severed subsurface mineral rights was clearly conditional. The owner of those rights had a duty to return them for taxation; however, if the owner failed to do so, the tax assessor could separately assess the rights only when a written request to do so had been filed by the owner of some record interest in the property. When that statute was assailed, the Florida Supreme Court, in Cassady v. Consolidated Naval Stores Company, 119 So.2d 35 (Fla.1960), struck it down as unconstitutional, holding that “the effect of the Statute is to authorize the tax assessor to do what this court has said that he cannot do — that is, systematically and intentionally omit from the tax rolls property of the same classification as plaintiff’s.” The court held that the statute did not relate merely to the procedure or remedy for the collection of taxes but delegated assessment (the ascertainment and listing of the property to be taxed and its ownership), a sovereign legislative power that cannot be delegated, to the discretion or whim of the subsurface owner or the surface owner of the particular tract of land. Because of that conclusion, the court expressly did not consider the issue that the statute lacked constitutional requirements of uniformity and equality, but did direct attention to Federal Land Bank of Houston v. Texas, 314 S.W.2d 621 (Tex.Civ.App. 1958).
In 1963 the legislature amended section 193.221, Florida Statutes, by deleting the provision that the owner of the subsurface rights should return them for taxation, but repeated the provision that such rights, when separated from the fee, should be subject to separate taxation only “when returned for taxation by the owner of the fee,_or the owner or claimant of such subsurface rights_” When the validity of the amended statute again came before the Florida Supreme Court, in Dickinson v. Davis, 224 So.2d 262 (Fla.1969), in a four to three decision the majority upheld the amended statute. The dissent agreed with the conclusion of the trial court that the statute still did not mandate the tax assessor to assess and place on the tax rolls all mineral rights, or even all severed mineral *1112 rights, but required the assessor to do so only when both such rights had been severed and “when returned for taxation” and that the statute still vested in the specified parties the right to control if and when the severed subsurface rights in a particular tract of land was to be assessed for ad valorem taxes and still, as in Cassady, unconstitutionally delegated the taxing authority. The majority in Dickinson held that the initial sentence in the statute, providing that severed subsurface mineral rights were to be taken and treated as real property subject to taxation separate from the surface fee, was an independent and unqualified statement of the law and that it brought into play the provisions of section 193.021, Florida Statutes, relating to the method of assessment and section 193.11, Florida Statutes, requiring the county tax assessor to ascertain by diligent inquiry the names of all taxable persons and all taxable real estate. The majority also relied heavily on section 193.12, Florida Statutes, requiring every person owning or controlling property that was subject to taxation to return the property under oath to the county tax assessor. Thus, the supreme court held, in effect, that the tax assessor’s statutory duty to assess (§ 193.11, Fla.Stat. (1967)) and the statutory duty of both the surface arid subsurface owners to return the mineral rights for taxation (§ 193.12, Fla.Stat. (1967)) overcame the infirmity in the statute that would have resulted from requiring a separate assessment of the mineral rights only when the subsurface or surface owners acted to cause such separate assessment, which Cassady had held constituted an unconstitutional delegation of the legislative authority to‘ tax.
Chapter 69-60, section 1, Laws of Florida, deleted from section 193.221, Florida Statutes (1963), the language that made return of the rights by the surface or subsurface owners or those claiming through them a condition precedent to the assessor’s duty to separately assess severed subsurface mineral rights.[2]
These amendments and interpretations trace the history of the original chapter 57-150, Acts of 1957, to the present form of the statute as it is involved in this litigation.
First, the appellee/cross-appellant taxpayers challenge the validity of the assessment of their severed subsurface mineral rights on the ground that section 193.481, Florida Statutes (1981), is facially void for vagueness. Subsection (4) directs that the use of statutes and regulations relating to the assessment of other real property shall apply to the separate assessment of such subsurface rights only “insofar as they may be applied.’’ The taxpayers argue that this delegation to the county property appraiser of arbitrary discretion to determine which provisions (factors) of the statute (§ 193.-011, Fla.Stat., providing factors that must be considered in obtaining constitutional just valuation) to apply in the assessment of subsurface rights fails to provide sufficient standards for their assessment and results in an unconstitutional delegation of legislative authority.
Section 193.011, Florida Statutes (1982), sets forth eight factors and directs property appraisers to take them into consideration in arriving at just valuation as required under article VII, section 4 of the state constitution. All of the factors listed do not always apply in all valuations of all property for tax purposes. The phrase “insofar as they may be applied” contained in section 4 of section 193.481, Florida Statutes, is merely a recognition of that fact and of the unique difficulty involved in the valuation of subsurface mineral rights, the ownership of which has been severed from the ownership of the surface and other rights in the land but which have not been physically severed, or extracted or withdrawn from the soil or water, so that their quantity and quality can be more readily known and valued, as in the levying of an *1113 excise tax on the severance of minerals under sections 211.31 and 211.3106, Florida Statutes (1982). The usual exercise of discretion by the property appraiser in the application of the different factors set forth in section 193.011, Florida Statutes (1982), as they may reasonably apply differently to different classes and types of property to be valued and the recognition that mineral rights in place are different from other property does not create facial vagueness rendering this statute unconstitutional on that ground. The practical problems inherent in the valuation of such rights will be discussed below.
Appellant taxpayers assert that, as Cas-sady recognizes, a taxing statute that permits within one taxing unit some property to be taxed while permitting other property of the same classification to be systematically and intentionally omitted from taxation or taxed only at the discretion of the tax assessor (property appraiser) or any other individual or group is unconstitutional as unlawfully delegating the sovereign power to tax and as denying the equal protection of law. Appellant taxpayers further point out that Dickinson upheld the successor statute only by holding that it did not result in unconstitutional delegation and inequality because both the tax assessor and the property surface and subsurface owners had statutory duties to cause the assessment of all such severed mineral rights. Finally, appellant taxpayers argue that the saving provisions relied on in Dickinson do not apply in this case because (1) the duty of owners of real property to file returns was eliminated by chapter 70-243, Laws of Florida, now section 193.052(2), Florida Statutes (1982), and (2) section 193.-11(1), Florida Statutes (1967), requiring the tax assessor to “ascertain by diligent inquiry the names of all taxable persons in his county — and all taxable real estate therein —” was also eliminated by chapter 70-243, Laws of Florida. However, section 193.11(1) was replaced by present sections 193.085 and 193.114, Florida Statutes (1981), which provide that “the property appraiser shall insure that all real property within his county is listed and valued on the real property assessment roll.” Chapter 70-243, Laws of Florida, also placed duties on the Department of Revenue to promulgate regulations and to provide maps and forms necessary to insure that all real estate within the state is listed and justly valued on the real property assessment rolls of all the counties of the state. Even so, the taxpayers contend, as a matter of fact, that the Department of Revenue has not promulgated such regulations and the property appraisers of the respective counties comprising the taxing district of the St. Johns Water Management District have regularly and generally, systematically and intentionally, failed and neglected to take the actions necessary to “insure” that all severed subsurface mineral rights are assessed and are justly valued as mandated by article 7, section 4 of the Constitution of the State of Florida.
After a careful consideration of the statute, its history and purpose and the objections and arguments of the appellant taxpayers, we agree with the conclusion of the trial judge below that section 193.481, Florida Statutes, as presently written is not necessarily unconstitutional on its face and is capable of being applied constitutionally, provided it is properly implemented as necessary to achieve uniformity and equality in the assessment and just valuation of subsurface mineral rights. However, if diligent and substantial effort is not expended by the Department of Revenue to promulgate regulations and to take other actions to insure uniformity among the various counties in such assessment and valuation it will not result.
Basically two implementation problems are involved: (1) uniformity and equality in assessment and (2) just valuation.
The uniformity problem in placing all severed subsurface mineral rights on the tax rolls was basically the problem in Cassa-dy and Dickinson and arose in part from the wording of the statute. However, this assessment problem, as well as the valuation problem, also arises in part from an inherent difference between surface ownership of land and ownership of mineral rights *1114 beneath the surface of the land. If both water and land are considered “surface,” then all land has surface. All land surface can be located and visually observed and different parcels of land compared and, as a practical matter, surface rights are owned, traded and sold frequently enough to reflect market preferences and to establish comparable market prices.
On the other hand, all land does not have minerals beneath the surface and their existence or not under a particular parcel of land cannot be easily determined. Even when minerals are known to exist beneath a certain parcel their quantity, quality and value cannot be easily determined. Peculiar factors other than the value of the mineral rights are often involved in setting the consideration for a conveyance of the severed mineral rights. Further, the statute relates only to mineral rights, the ownership of which has been severed from the ownership of surface rights. Although the ownership of some mineral rights is severed by separate instruments or documents executed for that purpose only, most such rights are severed by being reserved by an owner-grantor in a deed conveying the surface rights away. These reservations are sprinkled at random in deeds in the chains of title to real property and do not stand out in a title search, as do separate conveyances of interests in land which appear to remain in the grantees in such conveyances unless those grantees, their heirs, devisees or assigns have also conveyed them on. Such mineral reservations are common in Murphy Act tax deeds, which in Florida have conveyed millions of acres. To locate all severed mineral rights for the purpose of putting them on the assessment roll requires a careful title search of the entire chain of title to all land. Such an identification of these severed mineral rights is a great burden and if properly done requires great labor and expense. However, it was a legislative prerogative to require that these real property interests bear their fair share of the ad valorem tax burden and to require a separate assessment and valuation of such property rights so as to fairly apportion the tax on the whole between the surface and subsurface owners.
The evidence before the trial court indicates that, while the taxing officers were aware of the statute and its mandatory requirements, some counties separately assess mineral rights when the surface owner insists, most counties simply do not tax such interests and at least one county separately assessed no severed mineral rights and had actually refused four requests to do so. The trial court concluded that no county had made a serious systematic effort to identify and separately assess all such mineral rights in the county and that, in the eight counties specifically examined in this litigation, no property appraiser had diligently taken action necessary to “insure that all” severed mineral rights “within his county is listed and valued on the real property assessment roll” as required by section 193.085 and. 193.114, Florida Statutes (1982). This is a very significant factual finding in view of the fact that the supreme court in Dickinson v. Davis relied on property appraisers performing this duty to assess in upholding the facial constitutionality of this statute and the fact that the statute requiring owners to return property for taxation of real property has now been repealed. The evidence specifically identified recorded documents relating to severed subsurface rights under 320,000 acres in Brevard, Orange and Osceola Counties and under 21,000 acres located in Putnam, Flagler, Lake, St. Johns, Seminole, Clay and Lafayette counties which were not assessed.
The position of the property appraisers in the eight counties specifically examined was that the identification of separately owned subsurface rights was a task for which they lacked sufficient manpower and resources, that the cost of hiring an outside abstractor to identify such rights would be prohibitive, that property appraisers generally have other more important and urgent problems and duties than the separate assessment of subsurface rights and- that the separate assessment of subsurface rights was not a matter of great public impor *1115 tance because it did not increase the total value of taxable property in the county.[3]
While, as stated above, we agree with the trial court that merely because section 193.-481(4), Florida Statutes (1982), recognizes that all of the factors set forth in section 193.011, Florida Statutes (1982), cannot always be applied in valuing mineral rights and directing the application of such factors “insofar as they may be applied” does not show in and of itself that the statute cannot be constitutionally applied, nevertheless, the nature of mineral rights causes many valuation problems peculiar and different from the problems involved in the valuation of surface land area. Some of these valuation problems relate to the same matters that also cause assessment difficulties. Consider a few examples. Some land has beneath the surface mineral deposits sufficiently well known in amounts and types that such deposits can be valued and traded by persons knowledgeable about such matters; this is not always true and is relatively rare in Florida. How does one value mineral “rights” beneath a parcel of land when it is not known whether or not there are any minerals under that parcel? Does the qualified “right” to explore for and to extract minerals from beneath a parcel of land exist and have an assessable just value when there are no marketable minerals beneath the particular parcel? How are such bare rights valued when it is known that there are no marketable minerals under such parcel? When minerals are known to be under a particular parcel but there is no feasible way to determine their quantity or quality, how can they be valued? When minerals are under a city lot, the surface of which is covered by buildings and as an actual practical matter the minerals cannot be extracted from the ground, how can they be valued? These are just some of the problems.[4] Perhaps the main valuation problem is that the monetary consideration for the conveyance of severed subsurface mineral rights is quite frequently based, not on any valuation of the market value of the minerals themselves, or even a market value of the right to explore for them, but reflects a payment for the removal of the obstruction that such severed rights constitute against the marketability of the surface rights themselves. This was recognized in Dickinson v. Davis, where it was said
It should be recognized that such property rights in this State are generally conveyed either for possible mining purposes, or to eliminate clouds[5] upon real property titles caused by the separate ownership of same from the ownership of the other interests in the land and improvements thereon.
The truth of this statement absolutely requires a recognition of the fact that sums paid for unknown subsurface rights can and do involve two factors, viz: (1) a market estimation of the value of the possibility of the existence of subsurface deposits and of their extraction value and (2) the unique desire, and oftentimes need, of the surface owner to reunite the severed subsurface *1116 rights with his title in order to acquire a full fee simple absolute title to all interests in the parcel. Many prospective purchasers and lenders require that there be no outstanding subsurface mineral rights. The amount a surface owner or others must pay for the potential value of this second factor — its nuisance or blackmail value — depends entirely on the desires and necessities, and the compulsion and compassion, if any, of the buyer and seller and not on any intrinsic “just” or “actual” or “market” value of the subsurface mineral rights themselves. Consideration paid by a buyer because of this latter factor constitutes no part of a proper valuation of the subsurface minerals for ad valorem tax purposes. Because of this unique situation, the consideration for conveyances of severed subsurface rights is not a reliable guide to either the extraction value of minerals or even of the value of the potential or possibility of an extraction value. Conveyances from owners of severed subsurface rights to surface owners are very suspect and should be strongly presumed not to be sales between a willing purchaser and a willing seller as contemplated by section 198.011(1), Florida Statutes (1982), and general law requiring comparable sales, to be evidence of value, to be those between a willing purchaser and a willing seller, neither under any compulsion to deal with the other. The factors in section 193.011, Florida Statutes, that can be applied to the valuation of subsurface rights, such as when minerals are known and subject to a specific valuation, must be applied and applied uniformly and equally, but factors not in section 193.011, Florida Statutes, cannot be lawfully applied. This includes factors relating to the nuisance of outstanding subsurface rights and of their rejoinder value to the marketability of the fee. There is also authority for the statement that a just valuation of such severed mineral rights cannot be obtained by either a flat rate per surface area or by using a percent of the value of the surface rights. Thus it can be seen that the individual county property appraiser has a most difficult, if not impossible, problem properly valuing subsurface mineral rights and why there is absolutely no hope for uniformity in such matters from county to county without detailed guidelines of statewide application. If such statewide guidelines cannot be conceived and drafted, then it must follow that such interests are incapable of being uniformily assessed and valued and, hence, cannot be lawfully taxed.
In 1973, the Florida legislature greatly expanded the responsibilities of the Department of Revenue to see to it that Florida tax rolls were prepared in compliance with law and granted the department the authority and means to secure such compliance. Chapter 73-172, Laws of Florida. In section 195.0012, Florida Statutes, the legislature declared that it intended
to recognize and fulfill the state’s responsibility to secure a just valuation for ad valorem tax purposes of all property and to provide for a uniform assessment as between property within each county and property in each other county or taxing district.
Section 195.002 provides in part:
The Department of Revenue shall have general supervision of the assessment and valuation of property so that all property will be placed on the tax rolls and shall be valued according to its just valuation, as required by the constitution....
Section 195.027(1) directs the Department to prescribe reasonable rules and regulations for the assessment and collection of taxes and declares:
It is hereby declared to be the legislative intent that the department shall formulate such rules and regulations that property will be assessed, taxes will be collected, and the administration shall be uniform, just and otherwise in compliance with the requirements of the general law and the constitution. (Emphasis added.)
Section 195.096 subjects the assessment rolls of each county to review by the Division of Ad Valorem Tax. Section 195.097(1) provides in part:
Upon evaluation of the findings of the Division of Ad Valorem Tax, and upon the independent study of his staff, the executive director of the department *1117 shall evaluate the assessment rolls of all counties and shall issue a notice to any property appraiser who he has determined has one or more classes or other strata of property listed on the assessment rolls in a manner inconsistent with the requirements of law, or is otherwise not assessing in accordance with the law. The executive director shall specify in this notice the classes or strata of property that have been improperly assessed on the prior year’s roll, the nature of the defect or defects, and the requirements of the department to obtain approval of the current year’s assessment roll. Such notice shall be provided to the property appraiser no later than January 15. (Emphasis added.)
Subsections (2) and (3) provide for the Department’s issuance of administrative orders and its continuing supervision of tax rolls to ensure that effective remedial steps are taken. Subsection (3) provides:
During its supervision, the department may seek any judicial remedy available to it under law to force compliance with its order, and may request removal of the property appraiser by the Governor when it deems such action necessary.
Section 193.114 provides for review of all Florida assessment rolls by the Department of Revenue. Subsection (6) provides:
The executive director shall disapprove all or part of any assessment roll of any county not in full compliance with the administrative order of the executive director issued pursuant to the notice called for in s. 195.097, and shall otherwise disapprove all or any part of any roll not assessed in substantial compliance with law, as disclosed during the department’s investigation, including, but not limited to, audits by the Department of Revenue and Auditor General establishing noncompliance.
The Department of Revenue is also authorized by section 195.092 to bring actions “to enforce the performance of any duties of any officer or official performing duties with relation to the execution of the tax laws of the state... . ” Section 195.087 also charges the Department of Revenue with the authority and responsibility to review and approve or amend the budgets of Florida property appraisers.
The “Property Assessment Administration and Finance Law” enacted in 1973 as chapter 195, Florida Statutes, makes it clear that the Florida Legislature intended, through and by means of the Florida Department of Revenue, to insure that local taxing officers comply with the law so that Florida’s ad valorem taxation law is enforced, implemented and administered uniformly throughout the state. At the same time the legislature evidenced a proper regard for the broad valuation discretion vested in local property appraisers by the Florida Constitution. The Florida Department of Revenue is clearly charged with the responsibility of seeing that Florida property appraisers and other local taxation officials comply with the laws which govern the assessment, collection and administration of ad valorem taxes in Florida. The evidence in this case fully supports, and we approve, the conclusion of the trial judge that the Florida Department of Revenue has taken no serious or effective action to require Florida property appraisers to comply with the mandatory requirements of section 193.481, Florida Statutes, and that the clear mandatory requirements of that statute have been flagrantly disregarded by most of the property appraisers in the eight counties within the St. Johns River Water Management taxing district that were specifically examined in this litigation and by the Florida Department of Revenue. We further approve the finding of the trial court that, with possibly two exceptions, those property appraisers have simply not taken the statute seriously and have for the most part disregarded its requirements. Referring to those property appraisers, the trial court stated: “They did not try and fail. They simply did not try.” The trial court found, and we agree, that compliance with section 193.481 is a clear mandatory duty of Florida property appraisers, which duty those public officials have no authority or discretion whatsoever to disregard and that the broad discretion of property ap *1118 praisers to value property for ad valorem tax purposes has no bearing on this problem. In view of Cassady and Dickinson and the present statutes, the only way that the assessment of severed subsurface mineral rights under section 193.481, Florida Statutes (1982), can be uniformly, lawfully and constitutionally assessed and valued is for the Department of Revenue to use its authority to cause the property appraiser to be able to, and to, use diligent effort to insure that all such mineral rights are assessed on the ad valorem tax rolls. This has not yet occurred.
When faced with the conclusion that section 193.481. had not been implemented by the property appraisers of various counties of the St. Johns River Water Management Taxing District so as to achieve constitutional equality in assessment and justice in valuation, the trial court was faced with an alternative in giving the taxpayers a remedy. Rather than cancelling the tax assessments, the trial judge's mind turned toward requiring the governmental taxing authorities to perform their duties so as to achieve, if possible, constitutional uniformity in assessment and valuation under the statute. Accordingly, the trial judge (1) expressly stated that the judicial conscience of the court was shocked at the failure of the taxing officials to apply section 193.481 so as to achieve constitutional uniformity in assessment in the multi-county taxing district, St. Johns River Water Management District, (2) noted that this problem did not involve differences of opinion as to valuation, (3) recognized that the court did not have jurisdiction over the taxing officials from the counties other than Volusia County, which other taxing officials testified at the trial but were not parties to this action, but (4) observed that the Florida Department of Revenue was a party over which the court had jurisdiction. The trial court further correctly observed that Volusia County did not exist in a world of its own for purposes of ad valorem taxation of real property because part of the taxpayers’ taxes was directly attributable to the millage that is levied by the St. Johns River Water Management District, of which Volusia County is but one county and, therefore, the actions of all property appraisers in all other counties of that multi-county taxing district were of legitimate concern to appellant taxpayers of Volusia County; thus, a court of equity should not “cast a glass eye upon plaintiff’s complaint” about the fact that their feet were being “held to the fire in Volusia County while identically situated owners of subsurface rights in other Florida counties [within the same multi-county taxing unit] are deliberately and systematically given a free ride by their property appraisers.” The trial judge found a “glaring, indisputable inequality among ad valorem tax rolls of different counties in the St. Johns River Water Management District” and concluded that the only way for section 193.481 to be applied so as to achieve constitutional uniformity in assessment and in valuation in a multi-county taxing unit was for the Department of .Revenue to perform its duties in that particular by prescribing mandatory rules, regulations and administrative orders directed toward achieving such constitutional uniformity. Accordingly, the trial court denied the taxpayers relief from their assessments and proceeded to order the executive director of the Department of Revenue “forthwith to take such action as may be appropriate and necessary to ensure that the provisions of section 193.481, Florida Statutes, are faithfully implemented and enforced at the earliest possible time and, in any event, in sufficient time to insure that Florida tax rolls for the 1981 tax year comply with the mandatory provisions of said statute.” The trial court further ordered the executive director to submit to the court written reports of actions taken to comply with the statute and the court order.
The executive director of the Department of Revenue of the State of Florida appeals, as do the taxpayers.
The experienced trial judge did a splendid job in this very complex case and all of his evidentiary and ultimate findings of fact are amply supported by the record in the case and are hereby approved, with one small exception. On Page 19 of the *1119 twenty-four page final judgment it is stated:
Plaintiffs have invoked the jurisdiction of this Court to compel the Florida Department of Revenue to perform its duties under the laws of the State of Florida.
This is incorrect. As stated in Paragraph 4 of the taxpayers’ complaint, the executive director of the Department of Revenue of the State of Florida was joined as a party defendant only in compliance with the mandatory requirements of section 194.181(5), Florida Statutes (1982). The taxpayers’ prayer for relief sought only a declaratory judgment that their assessments and valuations were illegal or that the pertinent statute was unconstitutional and an injunction against the collection of their taxes. The statement of issues set forth in the pretrial order related only to the constitutionality of section 193.481, Florida Statutes, either facially or as applied, and as to whether the contested assessments were defective and void because of improper assessment or valuation.
While under the pleadings in this case the trial court did not have the authority to require the Department of Revenue to perform its statutory duties, nevertheless, the result of the trial court’s findings is that the Department of Revenue’s failure to implement section 193.481, Florida Statutes, by appropriate regulations had resulted in the taxpayers’ subsurface rights being assessed in Volusia County when substantially all of similar property was not assessed in the other counties within the mul-ti-county taxing unit known as the St. Johns River Water Management District and that the taxpayers’ property so assessed was valued at a level higher than the general level of assessment of substantially all other similar property in other counties in the St. Johns River Water Management taxing district. Accordingly, the taxpayers were entitled to relief from the illegal assessment of their property in the past and not merely a court supervised and directed effort by the Department of Revenue to achieve constitutional uniformity in the future. Therefore, the final judgment is reversed and the cause remanded with instructions to the trial court to act on its findings and to declare that section 193.481, Florida Statutes (1982), has been unconstitutionally applied as to the assessment of the appellees’/cross-appellants’ taxpayers’ severed subsurface mineral rights in Volu-sia County, to declare said assessments illegal, null and void, to require an appropriate refund of all taxes paid by appel-lees/cross-appellants taxpayers under such illegal assessments and to enjoin the collection of taxes levied upon such illegal assessments.
REVERSED AND REMANDED with directions.
FRANK D. UPCHURCH, Jr., and SHARP, JJ., concur.

. Appellees’/Cross-appellants’ property is also within the St. Johns River Water Management District taxing district. §§ 73.069(2)(c), Fla. Stat. (1982). The district includes all of Nassau, Duval, St. Johns, Clay, Flagler, Volusia, Seminole, Brevard, and Indian River Counties and part of Baker, Alachua, Putnam, Marion, Orange, Lake, Polk, Osceola and Okeechobee Counties.

. Chapter 69-60, section 1, Laws of Florida, deleted the words “when returned for taxation by the owner of the fee, or other interest in the fee, or the owner of claimant of such subsurface rights or interest, or any person, firm or corporation claiming by, through or under the subsurface owner or claimant” following the words “shall be subject to separate taxation.”

. This view results from the requirement of section 193.481(3) that a reduction of the valuation of the surface land rights must be made equal to the valuation of severed mineral rights under such parcel.

. The legislature has recognized the difficulty in valuing these severed subsurface mineral rights. Section 211.13, Florida Statutes (1981), in chapter 211, which imposes an excise tax on oil and gas as it is removed from the ground, states “The several property appraisers of this state and tax assessors of the cities therein, when assessing the value of any land for ad valorem taxes, shall not increase the value thereof by reason of the fact that there may be oil or gas under the surface of such land, inasmuch as it is impossible under known valuation methods to accurately ascertain the true value of oil and gas in place and taxation thereof is more certainly accomplished after its capture or severance from the earth or water.” (emphasis added)

.Clouds on land titles are apparent outstanding claims which in fact or law are not genuine and real and these may be removed by a quiet title action. Unfortunately normal severed subsurface mineral rights are not mere “clouds” — they are genuine outstanding legal property rights and interests and cannot be cleared by a quiet title action. They can only be acquired by private persons by purchase or gift. They are not purchased for the purpose of making gifts of them to the surface owner.